UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM C. KING,                    )
10012 Tenbrook Drive                )
Silver Spring, Maryland  20901,     )
                                    )
      Plaintiff,                    )
                                    )    Civ. Action No.
          v.                        )
                                    )
ALPHONSO R. JACKSON,                )
   Secretary Of Housing And         )
   Urban Development,               )
   451 Seventh Street, S.W.          )
   Washington, D.C.  20410,          )
                                    )
      Defendant.                    )
_____)

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Preliminary Statement

1.)  This is an action by William C. King who, until the actions which give rise to this Complaint, served as the Director of the Office of Departmental Equal Employment Opportunity of the Department of Housing and Urban Development ("HUD"), a position in the Senior Executive Service which reported directly to the Secretary of HUD.

2.)  This case seeks redress for defendant's unlawful actions which culminated in coercing Mr. King's resignation and causing his constructive discharge from HUD in violation of the "opposition clause" of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating, by reference, 42 U.S.C. §2000e-3(a)).

3.)  On August 8, 2002, former HUD Secretary Mel Martinez was named a defendant in a class suit entitled <u>Worth v. Martinez,</u>

1

et al., Civil Action No. 02-1576 (D.D.C.) ("the _Worth_ class action"). Among the stated purposes of the _Worth_ class action Complaint was obtaining a "permanent injunction prohibiting" HUD from utilizing its Affirmative Employment Plan "to make hiring, promotion, or other employment decisions."

4.) Title VII of the Civil Rights Act expressly requires all Executive agencies, including HUD, to "maintain an affirmative action program of equal employment opportunity." 42 U.S.C. §2000e-16(b)(1). HUD's own regulations provide that the "Office of the Secretary … shall establish, maintain and carry out a plan of affirmative employment (AE) to promote equal opportunity in every aspect of employment policy and practice." 24 C.F.R. §7.4. The Civil Service Reform Act also requires "each Executive agency to conduct a continuing program for the recruitment of members of minorities for positions in the agency." 5 U.S.C. §7202(c)(1).

5.) In an effort to secure the dismissal of the _Worth_ class action on the grounds of mootness, on September 9, 2003, current HUD Secretary Alphonso R. Jackson (then, Deputy Secretary) directed Mr. King to sign a Declaration under penalty of perjury which, in pertinent part, stated that HUD's Fiscal Year 2003 Affirmative Employment Plan would "not be renewed or reissued."

6.) Mr. King refused to execute the foregoing Declaration, because HUD's failure to have an affirmative employment plan in

place would violate Title VII and other federal law and regulation identified above.

7.) Mr. King expressed his refusal to execute the foregoing Declaration privately, respectfully, and without compromising HUD's defense of the <u>Worth</u> class action.

8.) Nonetheless, on September 9, 2003, Secretary Jackson notified Mr. King that unless he resigned, Mr. King would be fired for insubordination for refusing Secretary Jackson's direct order to execute the foregoing Declaration in the <u>Worth</u> class action.

9.) On October 1, 2003, Secretary Jackson coerced Mr. King into resigning and triggered his constructive discharge by relieving Mr. King of his duties and responsibilities, detailing Mr. King to a position outside of his office, proposing to discharge Mr. King for insubordination, and arranging for former Secretary Martinez to discharge Mr. King for insubordination.

10.) Mr. King's refusal to execute a Declaration in the <u>Worth</u> class action constituted protected activity under the "opposition clause" of Title VII, because it embodied his opposition to a practice that was made unlawful by Title VII and that would undermine one of Title VII's central purposes, and defendant's actions against him were retaliatory. To remedy defendant's unlawful conduct, this action seeks: a.) declaratory and injunctive relief; b.) reinstatement as Director of the Office of Departmental Equal Employment Opportunity of HUD c.) backpay and commensurate benefits; and d.) record correction and

expunction.    Mr. King also seeks compensatory damages and an award of attorneys' fees and costs.

### Parties, Jurisdiction, And Venue

11.) Plaintiff William C. King was, at all times relevant, the Director of the Office of Departmental Equal Employment Opportunity of the Department of Housing and Urban Development ("HUD").  Mr. King is an African American male and resides at the address recited in the caption of this Complaint.

12.) Defendant Alphonso R. Jackson is the Secretary of Housing and Urban Development, the Cabinet official who heads HUD, and is sued in his official capacity only.   HUD is a department in the Executive Branch of the federal government, the mission of which is to provide and encourage the provision of moderate and low income housing in the United States.

13.) Jurisdiction of this Court is based upon 28 U.S.C. §1332; and 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §§2000e-3(a), 5(c)).   Venue lies here pursuant to 28 U.S.C. §1391, and 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000-5(f)(3)), because the actions of defendant at issue in this judicial district, where plaintiff would be employed but for their commission.

**Statement Of Facts**

**Background**

14.) Plaintiff William C. King was employed as the Director of the Office of Departmental Equal Employment Opportunity of the Department of Housing and Urban Development ("HUD"), a position in the Senior Executive Service, from March 19, 2000, until his coerced, involuntary resignation and constructive discharge, effective October 21, 2003.

15.) In that position, Mr. King reported directly to the Secretary of Housing and Urban Development, served as the principal advisor to the Secretary and the Deputy Secretary on matters related to HUD's equal employment program, and had nationwide responsibility for HUD's Equal Employment Opportunity and Affirmative Employment programs designed to ensure the enforcement of federal laws which prohibit discrimination and retaliation in federal employment and promote affirmative employment at HUD.

16.) Mr. King's duties and responsibilities included responsibility for HUD's Departmentwide Equal Employment Opportunity program, codified in 24 C.F.R. Part 7; HUD's administrative EEO complaints process, including the establishment of HUD's Alternative Dispute Resolution program; HUD's reasonable accommodation program and guidelines; and the production and maintenance of HUD's annual Departmentwide Affirmative Employment Program, and for its approval by the Secretary of HUD.

17.) In recognition of Mr. King's superior, sustained performance, Secretary Jackson approved Mr. King's promotion from SES Level 2 to SES level 4.

18.) In total, Mr. King has over 30 years of creditable public service, including five years as the supervisory Assistant General Counsel for Personnel Law in HUD's Office of General Counsel, where his performance was annually rated at the "Outstanding" level.  Mr. King also served with distinction in various positions of increasing responsibility with the government of the District of Columbia.

19.) Defendant retaliated against Mr. King and coerced Mr. King into resigning and caused his constructive discharge, effective October 21, 2003, by threatening to fire Mr. King for opposing a practice made unlawful under Title VII and other federal law and regulation unless he resigned, relieving Mr. King of all duties and responsibilities, detailing Mr. King to a position outside of his office, proposing to discharge Mr. King on the alleged ground of insubordination, and arranging to discharge Mr. King.

**The Worth Class Action**

20.) On August 8, 2002, former HUD Secretary Mel Martinez and Equal Employment Opportunity Commission Chair Cari Dominguez were named as defendants in a class action entitled Worth v. Martinez, et al., Civil Action No. 02-1576 (D.D.C.) ("the Worth class action").

21.) The Worth class action sought "injunctive and declaratory relief on behalf of current and future … white male individuals who are employees" of HUD "and other federal departments and agencies" who, according the First Amended Complaint, "have been repeatedly subjected to affirmative action employment plans that discriminate on the basis of race, ethnicity and gender in violation of" the Fifth Amendment to the Constitution and Title VII of the Civil Rights Act, as amended.

22.) Among the stated objectives of the Worth class action was a "permanent injunction prohibiting" HUD from utilizing its Affirmative Employment Plan "to make hiring, promotion, or other employment decisions."

23.) One of the specific targets of the Worth class plaintiffs was the HUD Annual Departmentwide Affirmative Employment Program ("AEP") which, among other matters, tracked HUD's minority and female hiring and employment and established its affirmative employment program for each Fiscal Year. Mr. King had been responsible for the preparation and implementation of HUD's AEP's and for their approval by the Secretary of HUD, since his appointment as Director of HUD's Office of Departmental Equal Employment Opportunity of the Department of Housing and Urban Development.

24.) On October 8, 2002, defendants Martinez and Dominguez filed their first motion to dismiss the Worth class action on a number of grounds, among them standing and injury-in-fact.

25.) On August 20, 2003, the district court entered an Order denying defendants' motion to dismiss and ordering defendants to file a brief discussing the continued effect of EEOC Management Directive ("MD") 714 after October 1, 2003.

26.) EEOC MD-714 was issued in 1987 and required all federal agencies covered by Title VII, including HUD, to submit data concerning minority and female recruitment, hiring, and employment, and establish and maintain affirmative employment programs of equal employment opportunity, as required under Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16(b)(1).

27.) Effective October 1, 2003, MD-714 was superseded by MD-715, which is silent as it relates to federal agencies' maintenance of affirmative employment programs of equal employment opportunity.

28.) In response to the district court's Order of August 20, 2003, defendant directed Mr. King to execute a Declaration under penalty of perjury which, in pertinent part, stated:

> Pursuant to EEOC Management Directive 714 ('MD-714'), HUD's Fiscal Year ('FY') 2003 Affirmative Employment Plan ('AEP') expires on September 30, 2003.

> The FY 2003 HUD AEP will not be renewed or reissued.

Mr. King refused to sign the foregoing Declaration, on the ground that HUD was required by federal law and regulation, including Title VII, to prepare, update, and maintain a program of affirmative employment for recruitment and hiring at HUD.

## <u>Defendant's Retaliation</u>

29.) On September 9, 2003, upon learning that Mr. King had refused to sign the foregoing Declaration in the <u>Worth</u> class action, HUD Secretary Jackson (then, the Deputy Secretary) directed Mr. King to sign it under penalty of being fired for insubordination.

30.) Mr. King refused to execute the foregoing Declaration, because HUD's failure to have an affirmative employment plan in place would violate Title VII, 42 U.S.C. §2000e-16(b)(1); HUD regulations, 24 C.F.R. §7.4; and the Civil Service Reform Act, 5 U.S.C. §7202(c)(1).

31.) Mr. King expressed his refusal to execute the foregoing Declaration privately, respectfully, and without compromising HUD's defense of the <u>Worth</u> class action in any manner, shape, or respect. HUD has defended the <u>Worth</u> class action and continues to do so effectively without Mr. King having executed the foregoing Declaration.

32.) Nonetheless, on September 9, 2003, Secretary Jackson advised Mr. King that unless he resigned, he would be fired for insubordination for refusing his direct order to execute the foregoing Declaration.

33.) Faced with this choice, On September 10, 2003, Mr. King submitted his resignation from his position and from HUD, effective September 30, 2003.

34.) On September 11, 2003, Secretary Jackson accepted Mr. King's resignation and placed him on administrative leave, thereby relieving Mr. King of all duties and responsibilities.

35.) On September 29, 2003, in accordance with federal personnel law which provides that a resignation from federal service may be withdrawn before it becomes effective, Mr. King withdrew his resignation. Mr. King did so in the belief that Secretary Jackson had reconsidered his ultimatum that unless he resigned, Mr. King would be fired for refusing the direct order to execute a Declaration in the <u>Worth</u> class action.

36.) Upon learning that Mr. King had withdrawn his resignation, on October 1, 2003, Secretary Jackson relieved Mr. King of all duties and responsibilities; detailed Mr. King to a position outside of his office; proposed to discharge Mr. King from HUD for insubordination, specifically refusing his direct order to execute a Declaration in the <u>Worth</u> class action, and arranged for former Secretary Martinez to discharge Mr. King.

37.) Before defendant issued the proposal to discharge Mr. King for refusing Secretary Jackson's direct order to execute a Declaration in the <u>Worth</u> class action, former Secretary Martinez had irrevocably predetermined to discharge Mr. King for insubordination.

38.) With the decision to discharge him from HUD having already been made, and as a licensed attorney and a professional manager with an outstanding record of performance and an unblemished record of conduct with over 30 years of public

service, Mr. King had no choice but to resign before being discharged, in order to protect his professional reputation and his future career opportunities.

39.) Further, as of October 1, 2003, HUD had obtained authority from the Office of Personnel Management to permit early retirement. To be eligible, agency employees needed to be 50 years of age or older and have 20 years of federal service, or have 25 years of federal service regardless of age, criteria which Mr. King satisfied at that time. Had he waited to be removed from the service before resigning, Mr. King would no longer be eligible for early retirement.

40.) Accordingly, effective October 21, 2003, Mr. King was coerced into resigning and was constructively discharged from HUD.

### Exhaustion Of Administrative Remedies

41.) Mr. King timely initiated the informal administrative EEO complaints process concerning the employment actions which comprise the subject matter of this Complaint on November 19, 2003.

42.) On February 4, 2004, Mr. King timely filed a formal administrative complaint of discrimination.

43.) On April 28, 2005, defendant issued a Final Agency Decision in Mr. King's formal complaint of discrimination, which plaintiff received on May 2, 2005.

44.) Mr. King has exhausted the administrative remedies available to him and timely initiated this action.

11

**COUNT I**
**(Retaliation – Coerced Resignation)**

45.) Plaintiff repeats the allegations contained in paragraphs 1 through 44 above, as though fully set forth here.

46.) Plaintiff engaged in protected activity when he refused the direct order of Secretary Jackson (then, Deputy Secretary) to execute a Declaration in the <u>Worth</u> class action stating that HUD's Affirmative Employment plan then in existence would be permitted to expire without one being implemented in its place, because HUD was required by federal law and regulation, including Title VII, to prepare and maintain a program of affirmative employment for recruitment and hiring at HUD.

47.) On or about September 9, 2003, Secretary Jackson retaliated against Mr. King when he notified Mr. King that, unless he resigned, Mr. King would be fired for insubordination for refusing Secretary Jackson's direct order to execute the foregoing Declaration in the <u>Worth</u> class action.

48.) On October 1, 2003, Secretary Jackson retaliated against Mr. King when he relieved Mr. King of all duties and responsibilities, detailed Mr. King to a position outside of his office, proposed to discharge Mr. King from HUD for insubordination for refusing his direct order to execute the foregoing Declaration in the <u>Worth</u> class action, and arranged for defendant to discharge Mr. King for insubordination.

49.) As a natural and proximate result of Secretary Jackson's retaliation, Mr. King was coerced into resigning from HUD, effective October 21, 2003.

50.) In taking the foregoing actions, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities; stigmatized plaintiff; and damaged plaintiff's professional reputation and standing.

51.) Defendant violated the opposition clause of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-3(a)), by retaliating against plaintiff in the manners described above.

52.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

### COUNT II
### (Retaliation – Constructive Discharge)

53.) Plaintiff repeats the allegations contained in paragraphs 1 through 52 above, as though fully set forth here.

54.) Plaintiff engaged in protected activity when he refused the direct order of Secretary Jackson (then, Deputy Secretary) to execute a Declaration in the Worth class action stating that HUD's Affirmative Employment plan then in existence would be permitted to expire without one being implemented in its place, because HUD was required by federal law and regulation, including Title VII, to prepare and maintain a program of affirmative employment for recruitment and hiring at HUD.

55.) On or about September 9, 2003, Secretary Jackson retaliated against Mr. King when he notified Mr. King that unless

he resigned, Mr. King would be fired for insubordination for refusing Secretary Jackson's direct order to execute the foregoing Declaration in the Worth class action.

56.) On October 1, 2003, Secretary Jackson retaliated against Mr. King when he relieved Mr. King of all duties and responsibilities, detailed Mr. King to a position outside of his office, proposed to discharge Mr. King from HUD for insubordination for refusing his direct order to execute the foregoing Declaration in the Worth class action, and arranged for defendant to discharge Mr. King for insubordination.

57.) Secretary Jackson's retaliation rendered plaintiff's working conditions intolerable and caused his constructive discharge from HUD, effective October 21, 2003.

58.) In taking the foregoing actions, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities; stigmatized plaintiff; and damaged plaintiff's professional reputation and standing.

59.) Defendant violated the opposition clause of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-3(a)), by retaliating against plaintiff in the manners described above.

60.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## PRAYER FOR RELIEF

Wherefore, plaintiff William C. King respectfully requests that the Court enter judgment in his favor and award him the following relief.

A.    An Order declaring that defendant violated plaintiff's civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and restraining and enjoining defendant from further such violations.

B.    An Order reinstating plaintiff as Director of the Office of Departmental Equal Employment Opportunity of HUD.

C.    Backpay and commensurate benefits from October 21, 2003.

D.    Record correction and expunction.

E.    Compensatory damages to the maximum extent allowed by law.

F.    The attorneys' fees and costs incurred by plaintiff in this action and the administrative proceeding which preceded it.

G.    Such other relief as may be just and appropriate.

## JURY DEMAND

Plaintiff requests a trial by jury of all issues so triable.

Respectfully submitted,

Robert C. Seldon, Esq.
  D.C. Bar No. 245100
Molly E. Buie, Esq.
  D.C. Bar No. 483767
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W., Suite 305
Washington, D.C.  20004
(202) 955-6968

By: _____
Counsel for Plaintiff