# DEFENDANT'S EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DENIS R. WORTH,<br><br>    Plaintiff,<br><br>    v.<br><br>ALPHONSO JACKSON, Acting Secretary, United States Department of Housing and Urban Development,[1] and CARL M. DOMINGUEZ, Chair, United States Equal Employment Opportunity Commission,<br><br>    Defendants. | Civil Action No. 02cv1576 (RBW) |

MEMORANDUM OPINION

Currently before the Court is the Defendants' Supplemental Motion to Dismiss the First Amended Complaint [#47].[2] In their motion for dismissal, defendants argue that this Court should dismiss the plaintiff's first amended complaint because intervening events have rendered this action moot. Plaintiff opposes this motion and argues that this action is not moot. For the reasons that follow, the Court will grant in part and deny in part defendants' motion, and will permit

---

[1] Pursuant to Fed. R. Civ. P. 25, the Court has substituted Alphonso Jackson, the current Acting Secretary of the Department of Housing and Urban Development, as the proper defendant.

[2] Currently, there are two additional motions pending before the Court. The first is the defendants' motion to dismiss or, alternatively, for summary judgment, which is also directed at the first amended complaint. This motion became ripe on August 1, 2003. However, before the Court had the opportunity to address that motion, on September 12, 2003, the defendants filed the current motion to dismiss the first amended complaint on mootness grounds. The second pending motion, which was filed after the Court held a status hearing in this matter on November 6, 2003, is the plaintiff's motion to amend the complaint. This second motion will be discussed infra at 12, and a ruling on the first motion will be deferred in accordance with the Court's ruling on defendants' mootness argument.

plaintiff to conduct limited discovery to determine whether his claims have been rendered completely moot by actions recently taken by the defendants.

I. Background

A. Plaintiff's Allegations

Plaintiff Dennis Worth is a white male employed at the Department of Housing and Urban Development ("HUD") in St. Louis, Missouri. He has brought this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (2000), and the Fifth Amendment, U.S. Const. amend. V, to challenge "affirmative employment plans that discriminate on the basis of race, ethnicity and gender . . . . " First Amended Complaint ("Compl.") ¶ 1.[3] It appears from the complaint that these affirmative action plans were designed in accordance with the Equal Employment Opportunity Commission's ("EEOC") Management Directive "MD-714[,]"[4] which

> obligates all federal departments and agencies to create an 'affirmative employment plan for minorities and women' which is to identify alleged instances of 'manifest imbalance' and 'conspicuous absence' of women and racial minorities, by gender and race, and establish 'goals' and 'target dates' in order to eliminate such alleged 'underrepresentation' at all organizational levels.

Id. ¶ 10.

Plaintiff argues that MD-714 "has never been revised to reflect the higher

---

[3]The complaint was initially filed on August 8, 2002. On April 21, 2003, plaintiff filed his first amended complaint.

[4]The full title of the document is "Instructions for the Development and Submission of Federal Affirmative Employment Multi-Year Program Plans, Annual Accomplishment Reports, and Annual Plan Updates for FY 1988 through FY 1992 - EEO-Management Directive- 714." Defendants' Memorandum in Support of Defendants' Supplemental Motion to Dismiss the First Amended Complaint ("Def.'s Mem."), Exhibit ("Ex.") 1.

2

scrutiny standard announced in <u>Adarand v. Pena</u>, 515 U.S. 200 (1995)," and that HUD, through implementation of MD-714's requirements, "favors non-white racial groups over whites, and women over men." <u>Id.</u> ¶¶ 12, 15. In addition to these specific challenges, plaintiff also challenges HUD's practice of "provid[ing] employment goals, target deadlines, managerial appraisals and incentives only for alleged 'underrepresented' racial minorities and women, and not for whites or males, even when whites or males are 'underrepresented' in a job category." <u>Id.</u> ¶ 19. As a result of HUD's alleged discriminatory practices, plaintiff asserts that he has been denied several promotional opportunities. <u>Id.</u> ¶¶ 24-25. Plaintiff seeks to certify a class "consisting of white, male individuals who are employees of federal departments and agencies that promulgate AEPs [Affirmative Employment Plans] subject to approval by the EEOC . . . [,]" in addition to a "sub-class of white males who are applicants for employment, promotion or transfer at HUD, and who will in the future be subject to HUD's race or gender-conscious . . . policies and practices . . . ." <u>Id.</u> ¶ 28.[5]

Plaintiff seeks injunctive relief that would prohibit defendant Martinez from using the AEP in making any employment decisions and from discriminating on the basis of race and gender; injunctive relief prohibiting defendant Dominguez from "encouraging . . . inducing . . . and sanctioning . . . illegal discrimination" and a declaratory judgment that both defendants "violated, and are violating, [p]laintiff's rights to Equal Protection under the Fifth Amendment and Title

---

[5]In an order dated July 25, 2003, the Court ordered that a decision regarding plaintiff's motion for class certification be stayed pending resolution of the defendant's motion to dismiss the complaint.

3

VII[.]" Compl. at 6.

B. MD-714 versus MD-715

Defendants contend that plaintiff is not entitled to any of his requested relief because MD-714 is no longer in force, having been superceded by Management Directive 715 ("MD-715"), which became effective on October 1, 2003. As a preliminary matter, the Court must address the substance of the documents at issue. Although plaintiff's complaint broadly attacks all "affirmative employment plans that discriminate on the basis of race and gender[,]" Compl. ¶ 1, presumably, because all such plans were promulgated pursuant to MD-714, which was made applicable to "all executive agencies as defined in section 102 of Title 5, U.S.C. . . . and those units of the legislative and judicial branches of the Federal Government having positions in the competitive service[,]" these plans were based in large part on MD-714. Defs.' Mem., Ex. 1, MD-714, at 4. MD-714 became effective October 1, 1987, and it explicitly provided for "[n]umerical goal setting where there [was] a manifest imbalance or conspicuous absence of <u>minorities and women</u> in the agency's work force." <u>Id.</u> at 2 (emphasis added).[6] Agencies, such as HUD, "with 500 or more employees . . . ." were required to develop and submit "multi-year affirmative employment plans, annual accomplishment reports, and updates . . . ." to ensure the "development of comprehensive five-year programs to accomplish EEO

---

[6]MD-714 also provided for the establishment of "numerical objectives (goals) for each job category or major occupation where there [was] a manifest imbalance or conspicuous absence of <u>EEO Group(s)</u> in the work force." Defs.' Mem., Ex. 1, MD-714, at 13 (emphasis added). Ironically, the term "EEO Groups" was defined as males and females who are: Black, Hispanic, Asian American/Pacific Islander, American Indian/Alaskan, and <u>white</u>. <u>Id.</u> at 5.

objectives." Id. at 7.

In contrast to MD-714, MD-715 does not provide for any numerical goal-setting objectives. While the purpose of the document remains to "provide[] policy guidance and standards for establishing and maintaining effective affirmative programs of equal employment . . . [,]" MD-715's

> overriding objective . . . is to ensure that all employees and applicants for employment enjoy equality of opportunity in the federal workplace regardless of race, sex, national origin, color, religion, disability or reprisal for engaging in prior protected activity.

Defs.' Mem., Ex. 2, Equal Employment Opportunity Management Directive 715, at i-ii (emphasis added). Although MD-715 provides general guidance as to how agencies may achieve this objective, it states that the "EEOC will separately issue additional guidance and instructions for implementing the policies set forth [in the Directive]." Id. at iii.

C.  The Parties' Arguments

Defendant has filed the instant motion arguing that plaintiff's complaint should be dismissed on mootness grounds because "[o]n August 25, 2003, the EEOC issued Management Directive 715 ("MD-715") . . . which [became] effective on October 1, 2003, and which explicitly supercedes MD-714." Defendants' Memorandum in Support of Defendants' Supplemental Motion to Dismiss the First Amended Complaint ("Defs.' Mem.") at 1. According to defendants, "MD-715 eliminates the provisions of MD-714 about which [p]laintiff complains in his First Amended Complaint. In addition, defendants point out that HUD's AEP expire[d] on September 30, 2003, and will not be renewed or reissued." Id.

5

Furthermore, defendants opine that plaintiff does not have standing to challenge MD-715 "or any future policies or practices adopted by HUD pursuant to it, as he cannot demonstrate a likelihood of imminent injury." Id. at 1-2.

Plaintiff disagrees with the defendants' arguments and contends in his opposition that his complaint does not merely challenge MD-714 but "alleges generally that he has been subjected to a system of preferential hiring and promotion." Plaintiff's Statement of Points and Authorities in Opposition to Defendants' New Motion to Dismiss the Amended Complaint on Mootness Grounds ("Pl.'s Opp'n") at 1. Thus, according to plaintiff, his claims are not moot because "[t]he [a]mended [c]omplaint . . . charges HUD with a broad-based system of discrimination, not limited to things required by EEOC's MD-714 or in HUD's AEP, and that the EEOC has sanctioned and approved of this system of discrimination." Id. at 2. In addition, plaintiff contends that the defendants have not satisfied their burden of demonstrating that the discriminatory practices they created pursuant to MD-714 will not be used in the future. Id. at 6.

## II. Analysis

Defendants seek dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). "Rule 12(b)(1) presents a threshold challenge to the court's jurisdiction . . . ." Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987) (citation omitted). When reviewing a challenge pursuant to Rule 12(b)(1), the Court may consider documents outside the pleadings to assure itself that it has jurisdiction. See Land v. Dollar, 330 U.S. 731, 735 n.4 (1947) ("when a question of the District Court's jurisdiction is raised, either by a party or by the court on

its own motion . . . the court may inquire by affidavits or otherwise, into the facts as they exist.") (citations omitted); Haase, 835 F.2d at 906 ("In 12(b)(1) proceedings, it has been long accepted that the judiciary may make 'appropriate inquiry' beyond the pleadings to 'satisfy itself on authority to entertain the case.'") (citations omitted). By considering documents outside the pleadings on a motion to dismiss pursuant to Rule 12(b)(1), the Court does not convert the motion into one for summary judgment; "the plain language of Rule 12(b) permits only a 12(b)(6) motion to be converted into a motion for summary judgment." Id. at 905.

A. Mootness

"A federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue." Cleveland Branch, NAACP v. City of Parma, 263 F.3d 513, 530 (6th Cir. 2001) (citing Church of Scientology v. United States, 506 U.S. 9, 12 (1992), cert. denied 535 U.S. 971 (2002). Here, the Court must decide whether the defendants' post-complaint actions have rendered the issues raised by plaintiff's complaint moot. "'Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (citation omitted).

(1) Whether the Rescission of MD-714 Moots Plaintiff's Claims

Defendants argue that pursuant to a long line of cases that have held that rescission or re-promulgation of a challenged regulation or policy moots any challenge to that policy, the plaintiff's current claims are now moot. Defs.' Mem.

at 10-11. While the cases cited by defendants support this proposition, the Court concludes that they are distinguishable from the present case. Notably, the Court finds that although plaintiff specifically raised challenges to MD-714 in his complaint, a fair reading of the complaint supports plaintiff's position that it does not merely challenge the policies set forth in MD-714, which MD-715 either modifies or rescinds, but also challenges the manner in which those policies have been implemented by HUD, which plaintiff alleges has resulted in him being denied opportunities for advancement. Whether or not those policies were derived solely from MD-714 and HUD's prior AEP has not yet been definitively established and therefore, plaintiff's challenge to those policies remains viable.

Thus, this situation is distinguishable from cases where the precise regulations being challenged by the plaintiffs were rescinded or amended and thus rendered the plaintiffs' challenges in those cases moot. For example, in American Bankers Assoc. v. Nat'l Credit Union Admin., 271 F.3d 262 (D.C. Cir. 2001), the plaintiffs challenged a provision of a National Credit Union Administration ("NCUA") rule that provided for the consideration of "an area's 'primary ethnic composition' in determining whether it qualifie[d] as a 'well-defined local community,'" as violative of the Fifth Amendment, the Federal Credit Union Act, and the Equal Credit Opportunity Act. Id. at 274. The court of appeals concluded that these challenges were moot because the defendant had "deleted the ethnicity provision from the rule during the pendency of [the] appeal." Id. Thus, because the defendant had "eliminated the allegedly unlawful

8

provision and 'there [was] no indication [it would] revert to its past [policy][,]'" there was no live controversy for the court to resolve. Id. (citations omitted). Similarly, in Nat'l Mining Assoc. v. United States Dep't of the Interior, 251 F.3d 1007, 1011-12 (D.C. Cir. 2001), the court concluded that the plaintiff's challenges to specific provisions of the defendant's regulations had been rendered moot by the defendant's revision of the challenged regulations. And, in Clarke v. United States, 915 F.2d 699, 703 (D.C. Cir. 1990), the court concluded that the plaintiffs' challenge to a congressional amendment that conditioned the receipt of funding on the acceptance of a disputed provision was mooted when the amendment's funding condition ceased to be effective in light of the fact that the plaintiffs had "never sought a broad invalidation of conditioned funding generally." See also Flynt v. Weinberger, 762 F.2d 134, 135 (D.C. Cir. 1985) (holding that case that sought "declaratory and injunctive relief relating exclusively to [a] press ban . . . ." was rendered moot when "the absolute press ban was lifted.") (emphasis added).

Thus, unlike the circumstances in American Bankers Assoc., Nat'l Mining Assoc., Clarke, and the other cases citing by the defendants, plaintiff here has not only specifically challenged MD-714, which, presumably, would be mooted if the extent of his challenge had been directed solely at MD-714 because it has now been replaced by MD-715. Rather, he challenges HUD's general hiring and promotion practices, which he argues, favor racial minorities over non-

9

minorities and women over men.[7]  See Compl. ¶ 15 ("In its employment practices, HUD favors non-white racial groups over whites, and women over men.") (emphasis added); ¶ 18 ("HUD did not, and does not, have a compelling or important governmental interest that justifies its race-conscious and gender-conscious programs and classification.  Assuming arguendo that HUD had a legitimate interest, its use of race and gender is not properly tailored to meet any such interest.") (emphasis added); ¶ 19 ("HUD provides employment goals, target deadlines, managerial appraisals and incentives only for alleged 'underrepresented' racial minorities and women, and not for whites or males, even when whites or males are 'underrepresented' in a job category."); ¶ 21 ("HUD does not discontinue its racial and gender preferences after any alleged 'underrepresentation is eliminated.  HUD instead resumes setting employment goals for the preferred racial and gender groups whenever any alleged disparity reappears, regardless of its size."); ¶ 22 ("HUD's employment policies, practices and programs are unconstitutional because they contain and create impermissible race-conscious and gender-conscious preferences and classifications in recruitment, hiring, training, promotion and separation.") (emphasis added).

Plaintiff argues that it is these policies, which HUD has implemented

---

[7] To the extent that plaintiff was challenging "affirmative action plans that discriminate on the basis of race . . . ." Compl. ¶ 1, it would appear that this challenge would not be ripe until such time as the defendant promulgates a new AEP.  This fact may have repercussions for the class plaintiff was seeking to certify, however, the Court will address this issue after the parties have conducted limited discovery on the issues that will be identified by the Court, infra at 11-12.

presumably in accordance with the EEOC's guidance, that violate Title VII and the Fifth Amendment. And, according to plaintiff, MD-715, although more benign in its wording, does nothing to prevent HUD from continuing to apply its employment policies that allegedly favor minorities over non-minorities and women over men. Furthermore, plaintiff posits that to the extent HUD's internal employment practices and programs, including its hiring, promotion, retention and training policies, were created and implemented by HUD independent of MD-714, MD-715 does not prohibit HUD's continued implementation of these practices. The Court cannot conclude from the record now before it that the employment practices and policies that plaintiff challenges existed solely because of MD-714 and HUD's prior AEP or that these employment practices and policies have either been suspended or eliminated.[8] Although MD-714 has been rescinded, and HUD will not renew the AEP that was in effect when MD-714 was operative, presumably, practices regarding the recruitment, hiring, training and promotion of HUD employees remain in place as alleged by plaintiff.

---

[8] In fact, in their opposition to plaintiff's motion to amend his complaint, defendants acknowledge that "because HUD has operated in an 'MD-714' world since 1987, the effect of MD-714's rescission on HUD's general employment policies will take some time to determine." Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Amend the Complaint ("Defs.' Opp'n") at 9. Moreover, at this juncture, the Court is not aware of, and the defendants have failed to demonstrate, the relationship between MD-714 and HUD's general employment practices. It is apparent to the Court that the EEOC's directives are sufficiently obscure to allow two employers to implement entirely different AEPs and still be compliant with the EEOC's directives. The Court is not concluding that MD-715 may not possibly moot plaintiff's claims; what the Court has concluded is that, on the existing record, it cannot find that the employment practices being challenged by plaintiff have been completely eradicated and replaced by new, non-discriminatory practices. As drafted, the complaint is sufficient pursuant to Fed. R. Civ. P. 8(a) to put the defendant on notice of the precise practices plaintiff contends are discriminatory. See, e.g., Compl. ¶ 22 (HUD's employment policies, practices and programs . . . create impermissible race-conscious and gender-conscious preferences in recruitment, hiring, training, promotion and separation.").

11

Thus, it is possible that the defendant's prior policies, which plaintiff had standing to challenge because he has purportedly suffered injury as a result of the defendants' alleged preferential treatment of minorities,[9] are moot because they were derived solely from MD-714's implementation. However, having concluded that plaintiff's complaint can be read to challenge more than MD-714 and HUD's prior AEP, the current state of the record does not permit the Court to find that plaintiff's other challenges to HUD's practices and policies have been abolished. Accordingly, the Court cannot conclude at this time that plaintiff's challenges are moot. See Fund for Animals v. Jones, 151 F. Supp. 2d 1, 6 (D.D.C. 2001) (holding that defendants' withdrawal of their finding of no significant impact ("FONSI") did not moot the entire case where the complaint challenged practices that extended beyond the scope of the FONSI and "the federal defendants . . . failed to demonstrate how the withdrawal of the FONSI moot[ed] the entire case."). Therefore, while the Court will dismiss plaintiff's claims that challenge MD-714 and HUD's AEP that was previously in force and presumably was the product of MD-714's implementation, the Court will permit the parties to conduct limited discovery on the issue of whether plaintiff's challenge to HUD's general hiring, promotion, transfer and retention policies has

---

[9]Standing is determined at the time the complaint is filed, therefore, subsequent events have not deprived plaintiff of standing, although these events may render plaintiff's injuries moot or unripe. See Friends of the Earth, Inc., v. Laidlaw Envtl. Services, 528 U.S. 167, 184 (2000) ("Here . . . it is undisputed that Laidlaw's unlawful conduct . . . was occurring at the time the complaint was filed."); City of Parma, 263 F.3d at 524 ("[S]tanding does not have to be maintained throughout all stages of litigation. Instead, it is to be determined as of the time the complaint is filed."). It is clear in this case that HUD was implementing MD-714 and its AEP at the time that plaintiff filed his complaint. What remains to be seen is whether the employment practices plaintiff challenges were solely derived from those directives and, as such, whether his challenges to HUD's hiring, promotion, transfer and retention policies are moot.

also been rendered moot and to file supplemental pleadings with the Court concerning the current viability of plaintiff's challenges to these policies once discovery has been completed.

B. Plaintiff's Motion to File a Second Amended Complaint

Plaintiff has filed a motion to amend his complaint. Specifically, plaintiff seeks to amend the last sentence of paragraph 28 of his complaint, which currently provides:

> [Plaintiff] also seeks to represent a sub-class of white males who are applicants for employment, promotion or transfer at HUD, and who will in the future be subject to HUD's race or gender-conscious recruitment, hiring, training, promotion and separation policies and practices, promulgated pursuant to its AEP.

Compl. ¶ 28. Plaintiff seeks to amend the last clause of this paragraph to read "and separation policies, as well as discriminatory practices promulgated pursuant to its AEP." Plaintiff's Motion to Amend the Complaint ("Pl.'s Mot.") at 3. Defendants oppose plaintiff's motion, arguing that this amendment would be futile and, in any event, any challenge plaintiff has to defendants' future employment practices is not ripe as it is not clear what those practices will entail. In light of the Court's conclusion that the defendants have failed to establish mootness, it will permit plaintiff to amend his complaint, as it does not alter the substance of his allegations and will not prejudice the defendants in anyway.

13

SO ORDERED on this 5th day of January, 2004.[10]

                                                  REGGIE B. WALTON
                                                  United States District Judge

---

[10] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

14

# DEFENDANT'S EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DENIS R. WORTH,**<br><br>Plaintiff,<br><br>v.<br><br>**MEL MARTINEZ,** Secretary, United States Department of Housing and Urban Development, and **CARL M. DOMINGUEZ,** Chair, United States Equal Employment Opportunity Commission,<br><br>Defendants. | Civil Action No. 02cv1576 (RBW)<br><br>**FILED**<br><br>AUG 2 0 2003<br><br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

## ORDER

In accordance with the Court's oral orders that were issued during the status conference held in this matter on August 20, 2003, it is hereby

**ORDERED** that Defendants' Motion to Dismiss [#6] is denied as moot. It is further

**ORDERED** that defendants shall file a brief addressing the impact of the Equal Employment Opportunity Commission's revocation/modification of MD-714 on the claims asserted by the plaintiffs on or before September 12, 2003. It is further

**ORDERED** that plaintiff may file a response to defendants' brief on or before September 26, 2003. It is further

**ORDERED** that no reply may be filed. It is further

**ORDERED** that a further status conference shall be held in this matter on October 2, 2003 at 11:00 a.m.

**SO ORDERED** on this 20th day of August, 2003.

_____
REGGIE B. WALTON
United States District Judge

Copies to:

Michael E. Rosman
Center for Individual Rights
1233 20th Street, NW
Washington, DC 20036

Counsel for Plaintiff

Robert S. Libman
Jonathan Brian New
U.S. Department of Justice
P.O. Box 883
Washington, DC 20044

Counsel for Defendants