UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILLIAM C. KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 05-1074 (RJL) |
| | ) | |
| ALPHONSO R. JACKSON, | ) | |
| Secretary Of Housing And | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

PRELIMINARY STATEMENT

This is an action by William C. King, the former Director of the Office of Departmental Equal Employment Opportunity of the Department of Housing and Urban Development ("HUD") (Declaration of William C. King ("King Decl."), ¶1; Cplt., ¶14). In his former position, Mr. King reported directly to the Secretary of HUD and had nationwide responsibility for that department's Equal Employment Opportunity and Affirmative Employment programs (King Decl., ¶4; Cplt., ¶16). This case seeks redress for defendant's retaliation against Mr. King for refusing to declare the termination of HUD's Annual Departmentwide Affirmative Employment Program ("AEP"), in violation of the "opposition clause" of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16.

Mr. King's duties and responsibilities as the Director of HUD's Office of Departmental Equal Employment Opportunity

1

included issuing HUD's Annual Departmentwide AEP (King Decl., ¶9). The requirement for HUD to maintain such a plan is expressly codified in Title VII, which required all Executive agencies to "maintain an affirmative action program of equal employment opportunity." 42 U.S.C. §2000e-16(b)(1). HUD regulations also provided that the "Office of the Secretary … shall establish, maintain and carry out a plan of affirmative employment (AE) to promote equal opportunity in every aspect of employment" 24 C.F.R. §7.4 (King Decl., ¶10).

In no uncertain terms, the Equal Employment Opportunity Commission ("EEOC") has announced that this statutory directive has twin purposes: eradicating discrimination in federal employment and promoting affirmative employment activities (King Decl., ¶¶11-12). According to the EEOC's directive to federal agencies:

> Clearly, the historical intent of affirmative action in the federal service is to eliminate the effects of past and present employment discrimination against minorities and females.
>
> Affirmative employment programs in the federal sector are to provide sound occupational opportunities to those groups or classes who have not been in the mainstream of the workplace in the past.

(Memorandum, EEOC Office of Program Operations, Oct. 18, 1989) (King Decl., ¶12, Att. A at 1, 2).

The EEOC's objective in implementing this program conformed precisely with Congress' intent in amending Title VII in 1972 and making it applicable to the federal government.

> Congress amended Title VII because it was deeply concerned about the poor record of the federal

> government in ending employment discrimination. See
> S.Rep. No. 415, 92d Cong., 1st Sess. 4 (1971); H.R.
> Rep. No. 238, 92d Cong., 1st Sess. 3-5 (1971), U.S.
> Code Cong. & Admin. News, 1972, p. 2137. It sought to
> require the federal government to 'put its own house
> in order in terms of ending its own discriminatory
> employment practices,' 117 Cong. Rec. 32,101 (1971)
> (Remarks of Rep. Badillo), and it regarded the matter
> as urgent.

Thompson v. Sawyer, 678 F.2d 257, 287 (D.C. Cir. 1982). Congress

did so after it "recognized in no uncertain terms the illegality

of discrimination within … federal agencies, and sought to act

against it." Id. at 288.

     In keeping with this policy, the overarching purpose of

HUD's Departmentwide AEP was to codify the commitment of the

Secretary of HUD "to prohibit discrimination" in employment by

eliminating and remedying the effects of long-standing employment

discrimination that limited equal employment opportunity for

minorities and women (King Decl., ¶13 & Att. B at D-3). HUD

implemented a Departmentwide AEP annually until Fiscal Year 2004,

when it was challenged in Worth v. Martinez, et al., Civil Action

No. 02-1576 (D.D.C.) ("the Worth class action") (King Decl., ¶21;

Cplt., ¶20).

     In an effort to moot the Worth class action, HUD Secretary

Jackson (then, the Deputy Secretary) directed Mr. King to end

HUD's annual AEP and execute a Declaration supporting a motion to

dismiss that case (King Decl., ¶29 & Att. D; Cplt., ¶28).

> The practical effect of [doing so] was that no AEP and
> update would be completed for FY 2004, which would
> cause HUD's decades-long effort to end employment
> discrimination within the agency to be grievously
> undermined.

(King Decl., ¶30).  Mr. King refused and, when he did, Secretary
Jackson threatened him with removal for insubordination unless he
resigned (King Decl., ¶34; Cplt., ¶32).  On October 1, 2003,
Secretary Jackson made good on his threat by relieving Mr. King
of all duties and proposing his discharge for insubordination
(King Decl., ¶39 & Att. H; Cplt., ¶36).  In short order,
Secretary Jackson coerced Mr. King into resigning and
constructively discharged him (King Decl., ¶42; Cplt., ¶40).

The Complaint in this action was filed on May 27, 2005.
Defendant responded by moving to dismiss.  Reduced to its
essence, defendant contends that Mr. King's opposition to HUD's
termination of its annual Departmentwide AEP was "not protected
activity" because Title VII's requirement for federal agencies to
maintain such programs is enumerated separately in 42 U.S.C.
§2000e-16(b)(1), rather than as one of the unlawful employment
practices defined in 42 U.S.C. §2000e-2(a) (Def. Mot. at 1).
Defendant's argument is erroneous for any number of independent
reasons.

First and foremost, the D.C. Circuit has long held that
even in the private sector, where the Civil Rights Act imposes no
obligation on employers to implement and maintain affirmative
employment programs, "opposition to" a voluntarily adopted
"affirmative action plan" is protected under Title VII.  Parker
v. Balt. & Ohio R.R. Co., 652 F.2d 1012, 1020 (D.C. Cir. 1981).
Indeed, the sweep of the opposition clause is broad, so much so
that:  "Opposition based on reasonable belief" is "protected from

retaliation," even when the employee is mistaken that the action in question violates Title VII.  Id.  A fortiori, Mr. King's opposition to the unlawful termination of HUD's Departmentwide Affirmative Employment Program, a program mandated by Title VII, unquestionably met these standards and was protected.[1]

Second, defendant's argument is based on a purported distinction in the purpose behind HUD's Departmentwide AEP that simply did not exist.  The aim of HUD's AEP was inseparable from the overall objective of ending employment discrimination in federal executive departments and agencies, not only promoting affirmative minority employment (King Decl., ¶¶11-13 & Att. B at D-5-7).  Even in the private sector, Mr. King's opposition to HUD's failure to maintain and honor its annual AEP would have been protected, because "affirmative action programs … were designed to prevent … the perpetuation of racial and minority discrimination in" employment.  Johnson v. University of Cincinnati, 215 F.3d 561, 576 (6th Cir. 2000).  Whether this standard has been satisfied is a function of "the jury to decide" and not a proper subject of dispositive motions.  215 F.3d at 577 (emphasis in original).[2]

The most that can be said of defendant's motion is that it is premature.  At this stage of proceedings, "'all a complaint

---

[1]     The only decision of the D.C. Circuit cited in defendant's dispositive motion pre-dated Parker.  Pendleton v. Rumsfeld, 628 F.2d 102 (D.C. Cir. 1980).

[2]     The Sixth Circuit's decision cited by defendant, Holden v. Owens-Illinois, Inc., 793 F.2d 745 (6th Cir. 1986) pre-dated Johnson v. University of Cincinnati, supra.

has to say' to survive a motion to dismiss under Rule 12(b)(6)"
is that "'I was turned down for a job'" or subject to other
adverse employment action on account of retaliation. <u>Sparrow v.</u>
<u>United Airlines</u>, 216 F.3d 1111, 1115 (D.C. Cir. 2000) (quoting
<u>Bennett v. Schmidt</u> 153 F.3d 516, 518 (7th Cir. 1998). Whether or
not the practice in question actually violated Title VII in law
or in fact is simply irrelevant not only now, but on the merits.
<u>Parker v. Balt. & Ohio R.R. Co.</u>, <u>supra</u>, 652 F.2d at 1020. For
these reasons, and others stated below, defendant's motion to
dismiss must be denied.

## STATEMENT OF THE CASE

### Background

Plaintiff in this action, William C. King, served as the
Director of the Office of Departmental Equal Employment
Opportunity of the Department of Housing and Urban Development
("HUD"), until the actions which gave rise to this suit
(Declaration of William C. King ("King Decl."), ¶1; Cplt., ¶14).
Mr. King was a highly regarded member of the Senior Executive
Service, so much so that HUD Secretary Alphonso Jackson approved
his promotion from SES Level 2 to SES level 4 in recognition of
his superior performance (King Decl., ¶2; Cplt., ¶17). In total,
Mr. King had over 30 years of creditable public service,
including five years as a supervisory Assistant General Counsel
in HUD's Office of General Counsel, where his performance was
annually rated "Outstanding" (King Decl., ¶3; Cplt., ¶18).

The essential functions of Mr. King's former position as

the Director of HUD's Office of Departmental Equal Employment Opportunity are set out in 24 C.F.R. §7.4 (King Decl., ¶3; Cplt., ¶16). In that position, Mr. King reported directly to the Secretary of HUD, served as the principal advisor to the Secretary and the Deputy Secretary on matters related to HUD's equal employment program, and had nationwide responsibility for HUD's EEO and Affirmative Employment programs designed to ensure the enforcement of federal laws which prohibit discrimination and retaliation in federal employment and promote affirmative employment at HUD (King Decl., ¶4; Cplt., ¶16).

Mr. King's duties and responsibilities as the Director of HUD's Office of Departmental Equal Employment Opportunity included responsibility for HUD's Departmentwide Equal Employment Opportunity program, codified in 24 C.F.R. Part 7; HUD's administrative EEO complaints process, including the establishment of HUD's Alternative Dispute Resolution program; HUD's reasonable accommodation program and guidelines; and the production and maintenance of HUD's annual Departmentwide Affirmative Employment Program, and for its approval by the Secretary of HUD (King Decl., ¶4; Cplt., ¶16).

The purposes of HUD's Departmentwide Equal Employment Opportunity can best be understood by analyzing the core objectives of these three basic functions separately.

HUD's administrative EEO complaints process was first implemented under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, to provide informal counseling and

a formal administrative complaints process for HUD employees, former HUD employees, and candidates for HUD employment to raise administrative complaints of discrimination and retaliation arising from their employment, prospective employment, and former employment with HUD (King Decl., ¶¶5-6).[3]  The overall purpose of HUD's administrative EEO complaints program was to make a process readily available to air and resolve complaints of discrimination and retaliation, without the need for formal litigation before the Equal Employment Opportunity Commission or in United States District Court (King Decl., ¶7).[4]

The second component of HUD's Departmentwide Equal Employment Opportunity program is its reasonable accommodation program, which included guidelines for reasonable accommodation, as well (King Decl., ¶8).  The purpose of this program was to provide well-defined procedures for HUD employees and prospective employees to request reasonable accommodation under the Rehabilitation Act and the Americans With Disabilities Act, 42 U.S.C. §12112; and for agency management to evaluate and, if appropriate, offer reasonable accommodation (Id.).

---

[3]    As additional statutes prohibiting discrimination and retaliation in employment were promulgated and/or made applicable to federal agencies, the jurisdiction of the HUD administrative EEO complaints process was expanded to include such statutes within its coverage.  Examples of these subsequently promulgated statutes include the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621 et seq.; and the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§701 et seq. (King Decl., ¶¶5-6).

[4]    In furtherance of 29 C.F.R. §1614.102(b)(2), in 1999, the Alternative Dispute Resolution Program was added in order to make mediation available for the resolution of federal sector administrative complaints, a mechanism which proved to be highly effective (King Decl., ¶7).

The third component of HUD's Departmentwide Equal Employment Opportunity program was HUD's annual Departmentwide Affirmative Employment Program ("AEP"), which was implemented each Fiscal Year until FY 2004 with the specific approval of the Secretary of Housing and Urban Development (King Decl., ¶9). Mr. King's opposition to defendant's termination of HUD's Departmentwide AEP after FY 2003 and the adverse employment action he suffered as a result comprise the subject matter of this litigation.

### HUD's Departmentwide Affirmative Employment Program

The requirement for HUD to implement a Departmentwide Affirmative Employment Program ("AEP") was expressly codified in Title VII of the Civil Rights Act, which required all Executive agencies, including HUD, to "maintain an affirmative action program of equal employment opportunity." 42 U.S.C. §2000e-16(b)(1). HUD's own regulations also provided that the "Office of the Secretary … shall establish, maintain and carry out a plan of affirmative employment (AE) to promote equal opportunity in every aspect of employment policy and practice." 24 C.F.R. §7.4. The Civil Service Reform Act also requires "each Executive agency to conduct a continuing program for the recruitment of members of minorities for positions in the agency." 5 U.S.C. §7202(c)(1) (King Decl., ¶10).

Congress delegated the authority to administer the provisions of Title VII which required executive agencies "to maintain an affirmative action program of equal employment

opportunity" to the Equal Employment Opportunity Commission ("EEOC"). The mechanism by which the EEOC oversaw this program was Management Directive ("MD") 714 (King Decl., ¶11).[5]

In unequivocal language, the EEOC recognized that:

> Clearly, the historical intent of affirmative action in the federal service is to eliminate the effects of past and present employment discrimination against minorities and females.

(Memorandum, EEOC Office of Program Operations, Oct. 18, 1989) (King Decl., ¶12, Att. A at 1). Thus, the aim of HUD's AEP was inseparable from, and an integral part of, the overall objective of the federal government of ending employment discrimination in executive departments and agencies (King Decl., ¶12).

In keeping with this policy, the overarching purpose of HUD's Departmentwide AEP was to codify the commitment of the Secretary of HUD "to prohibit discrimination" in employment by eliminating and remedying the effects of long-standing employment discrimination that limited equal employment opportunity for minorities and women at HUD (King Decl., ¶13 & Att. B at D-3).

This much can easily be seen from the Fiscal Year 2003 Departmentwide AEP, which Mr. King was responsible for implementing, upon securing approval from the Secretary of HUD (King Decl., ¶14 & Att. B).

The FY 2003 AEP, like its predecessors, began by

---

[5]    The U.S. Office of Personnel Management ("OPM") administers 5 U.S.C. §7202(c)(1) through the Federal Equal Opportunity Recruitment Program ("FEORP") and requires the submission of the same demographic data as the EEOC mandated AEP under MD-714 (King Decl., ¶11).

recognizing that one of its core purposes was evaluating HUD's workforce in order "to identify any instances of under-representation (Manifest imbalance and Conspicuous absence) in the Department's work force, and to surface any barriers that would impede equality of employment for minorities and women" (King Decl., ¶14 & Att. B at D-1). In order words, the purpose of the AEP was to utilize statistical data to identify occupational categories from which minorities and woman had been excluded on account of current and historic discrimination, to promote affirmative employment, and to set out "the objectives, action items, and numerical goals targeted to correct imbalances and remove barriers that impede progress in [HUD's] AEP and within the Department" (Id.).

The AEP continued and committed HUD to use "Special Employment Programs to correct the under representation of minorities, women, and persons with disabilities" in HUD, as well as "to determine any barriers to full equal employment" and "to remove those barriers" (King Decl., ¶16 & Att. B at D-4). "AEP Plan goals and objectives" were operative in "recruitment, hiring, training, reassignment, and promotion" (Id.). All of these were part of the overall objective of HUD and the Executive Branch of eliminating discrimination and the effects of past discrimination in federal employment (King Decl., ¶16).

The FY 2003 AEP also addressed other specific discriminatory practices and reaffirmed HUD's commitment to their eradication. It confirmed that "harassment based on race, color,

religion, sex," and other protected categories would "not be tolerated" by the Secretary and that any HUD employee "found to have engaged in harassment" should "expect appropriate disciplinary action" (King Decl., ¶17 & Att. B at D-5).

"Sexual harassment" was identified in the AEP as a particularly egregious "form of sex discrimination," which warned that certain "advances may even result in criminal charges" ((King Decl., ¶18 & Att. B at D-6). As the AEP stated: "Sexual Harassment is a form of sex discrimination and violated Title VII" and set forth a detailed plan for the prevention of unlawful sexual harassment (Id. at DI-6, 7).

The AEP also reaffirmed HUD's policy to assure equal employment opportunity for "persons with disabilities" (King Decl., ¶19 & Att. B at D-6).

In furtherance of the overall objective of ending discrimination and the effects of past discrimination in employment at HUD, the FY 2003 AEP, like all of HUD's Departmentwide AEP's, contained an extensive analysis of the representation of minorities and women in the occupational categories represented in HUD's workforce ((King Decl., ¶20 & Att. B at DII-1-DIV-6). Where significant imbalances existed, "numerical objectives" for increased representation of minorities and/or women were established (Id. at DII-17, 22, 23, 24, 25-39).

## The Worth Class Action And Mr. King's Opposition

HUD's annual development and implementation of a Departmentwide AEP came under legal challenge in a class suit initiated on August 8, 2002, entitled Worth v. Martinez, et al., Civil Action No. 02-1576 (D.D.C.) ("the Worth class action") (King Decl., ¶21; Cplt., ¶20).  The Worth class action sought "injunctive and declaratory relief on behalf of current and future … white male individuals who are employees" of HUD "and other federal departments and agencies" who, according to the First Amended Complaint, "have been repeatedly subjected to affirmative action employment plans that discriminate on the basis of race, ethnicity and gender in violation of" the Fifth Amendment to the Constitution and Title VII of the Civil Rights Act, as amended (King Decl., ¶22 & Att. C; Cplt., ¶21).  Former HUD Secretary Mel Martinez and Equal Employment Opportunity Commission Chair Cari Dominguez were named as defendants (Id.).

Among the stated objectives of the Worth class action was a "permanent injunction prohibiting" HUD from utilizing its Affirmative Employment Plan "to make hiring, promotion, or other employment decisions" (King Decl., ¶23; Cplt., ¶22).  One of its specific targets was the HUD Annual Departmentwide AEP, the FY 2003 version of which was discussed above (King Decl., ¶14, Att. B.; Cplt., ¶23).

On October 8, 2002, defendants Martinez and Dominguez filed their first motion to dismiss the Worth class action on a number of grounds, among them standing and injury-in-fact (King Decl.,

¶25; Cplt., ¶24). On August 20, 2003, the district court entered an Order denying defendants' motion to dismiss and ordering defendants to file a brief discussing the continued effect of EEOC Management Directive ("MD") 714 after October 1, 2003 (King Decl., ¶26; Cplt., ¶25).

As discussed earlier, EEOC MD-714 was issued in 1987 and required all federal agencies covered by Title VII, including HUD, to submit data concerning minority and female recruitment, hiring, and employment, and establish and maintain affirmative employment programs of equal employment opportunity, as required under Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16(b)(1) (King Decl., ¶27).

Effective October 1, 2003, MD-714 was superseded by MD-715, a directive that, except for issues related to physical disability, was silent as it relates to federal agencies' maintenance of affirmative employment programs of equal employment opportunity (King Decl., ¶28). In several instances, MD-715 made reference to future guidance that would be provided to federal agencies about affirmative employment programs (Id.).

In response to the district court's Order of August 20, 2003, HUD Secretary Jackson (then, the Deputy Secretary) directed Mr. King to execute a Declaration under penalty of perjury which, in pertinent part, stated:

> Pursuant to EEOC Management Directive 714 ('MD-714'), HUD's Fiscal Year ('FY') 2003 Affirmative Employment Plan ('AEP') expires on September 30, 2003.
>
> The FY 2003 HUD AEP will not be renewed or reissued.

(King Decl., ¶29 & Att. D; Cplt., ¶28).

In the absence of any amendment to Title VII, Mr. King refused to sign the foregoing Declaration:

> The practical effect of the declaration was that no AEP and update would be completed for FY 2004, which would cause HUD's decades-long effort to end employment discrimination within the agency to be grievously undermined.

(King Decl., ¶30). Simply put, the action which Mr. King refused to take would have ended HUD's long-standing program for eliminating and remedying discrimination in employment and the effects of past discrimination (King Decl., ¶¶30-31).

### HUD'S Response To Mr. King's Protected Opposition

On September 9, 2003, upon learning that Mr. King had refused to sign the foregoing Declaration in the Worth class action, HUD Secretary Jackson directed Mr. King to sign it under penalty of being fired for insubordination (King Decl., ¶31; Cplt., ¶29). Mr. King refused to do so, because HUD's failure to have an affirmative employment plan in place would violate Title VII, 42 U.S.C. §2000e-16(b)(1); HUD regulations, 24 C.F.R. §7.4; and the Civil Service Reform Act, 5 U.S.C. §7202(c)(1), and undermine the overall purposes of Title VII to eliminate and remedy discrimination at HUD (King Decl., ¶32; Cplt., ¶30).

Mr. King's refusal to execute the foregoing Declaration was expressed privately, respectfully, and without compromising HUD's defense of the Worth class action in any manner, shape, or respect (King Decl., ¶33; Cplt., ¶31). Indeed, HUD continued to defend the Worth class action and recently secured its dismissal

effectively without Mr. King having executed the foregoing Declaration (Id.).  Nonetheless, on September 9, 2003, Secretary Jackson advised Mr. King that unless he resigned, he would be fired for insubordination for refusing his direct order to execute the Declaration (King Decl., ¶34; Cplt., ¶32).

Faced with this choice, on September 10, 2003, Mr. King submitted his resignation, effective September 30, 2003 (King Decl., ¶36 & Att. E; Cplt., ¶33).  The following day, Secretary Jackson accepted Mr. King's resignation and placed him on administrative leave, thereby relieving Mr. King of all duties and responsibilities (King Decl., ¶37 & Att. F; Cplt., ¶34).

On September 29, 2003, in accordance with federal personnel law which provides that a resignation from federal service may be withdrawn before it becomes effective, Mr. King withdrew his resignation (King Decl., ¶38 & Att. G; Cplt., ¶35).  Mr. King did so in the belief that Secretary Jackson had reconsidered his ultimatum (Id.).  Upon learning of Mr. King's action, on October 1, 2003, Secretary Jackson relieved Mr. King of all duties and responsibilities as Director of HUD's Office of Departmental Equal Employment Opportunity; detailed him to a position outside of his office; proposed to discharge him from HUD for insubordination for refusing his direct order to execute a Declaration in the Worth class action; and arranged for former Secretary Martinez to discharge him (King Decl., ¶39 & Att. H; Cplt., ¶36).

Based on Mr. King's experience in the Office of the Secretary, before defendant issued the proposal to discharge him for refusing Secretary Jackson's direct order to execute a Declaration in the <u>Worth</u> class action, Mr. King knew that former Secretary Martinez had irrevocably predetermined to discharge him for insubordination (King Decl., ¶39; Cplt., ¶37).  With the decision to discharge Mr. King from HUD having already been made, and as a licensed attorney and a professional manager with an outstanding record of performance and an unblemished record of conduct with over 30 years of public service, Mr. King had no choice but to resign before being discharged, in order to protect his professional reputation and future career opportunities (King Decl., ¶40; Cplt., ¶38).[6]  Accordingly, effective October 21, 2003, Mr. King was coerced into resigning and was constructively discharged from HUD (King Decl., ¶42; Cplt., ¶40).

---

[6]    Further, as of October 1, 2003, HUD had obtained authority from the Office of Personnel Management to permit early retirement (King Decl., ¶41; Cplt., ¶39).  To be eligible, agency employees needed to be 50 years of age or older and have 20 years of federal service, or have 25 years of federal service regardless of age, criteria which Mr. King satisfied at that time.  Had Mr. King waited to be removed from the service before resigning, he would no longer be eligible for early retirement and would be deprived of means to support himself and his family (<u>Id</u>.).

**ARGUMENT**

**DEFENDANT'S MOTION TO DISMISS MUST BE DENIED**

**I.    Defendant Cannot Satisfy The Exacting Legal Standards Governing The Adjudication Of A Motion To Dismiss.**

The cardinal rule in adjudicating a motion to dismiss is that all "the material allegations of the Complaint" and all inferences to be drawn therefrom must be taken "as admitted." Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Dismissal is permissible only if, upon doing so, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Matters outside the four corners of the Complaint must, under Rule 12(b), Fed. R. Civ. P., "be treated" under the standards "for summary judgment," which requires the "evidence of the non-movant … to be believed, and all justifiable inferences … to be drawn in his favor." Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress Co., 398 U.S. 144, 158-59 (1970)).

These rules apply with particular force here, because there are no special rules of pleading governing Title VII complaints. Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002). They need only meet the notice pleading requirements of the Federal Rules of Civil Procedure. Id. As the D.C. Circuit has held:

> In sum, we agree with the conclusion reached by Judge Easterbrook in Bennett [v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998)): 'Because racial discrimination in

> employment is 'a claim upon which relief can be granted,'.... 'I was turned down for a job because of my race' is all a complaint has to say' to survive a motion to dismiss under Rule 12(b)(6). <u>Bennett</u>, 153 F.3d at 518.

<u>Sparrow v. United Airlines</u>, 216 F.3d 1111, 1115 (D.C. Cir. 2000).

There is simply no doubt that the Complaint in this action satisfied this standard. It specifically alleges that Mr. King engaged in opposition to practices made unlawful under Title VII, that he suffered adverse employment action, and that the two were causally connected (<u>E.g.</u>, Cplt., ¶¶54-58). <u>E.g.</u>, <u>Mitchell v. Baldridge</u>, 759 F.2d 80, 86 (D.C. Cir.1985); <u>McKenna v. Weinberger</u>, 729 F.2d 783, 790 (D.C. Cir. 1984). The sincerity and reasonableness of Mr. King's belief that the action he opposed violated Title VII cannot be doubted and, therefore, the Complaint states a claim for relive (Cplt., ¶¶30-31); <u>Parker v. Balt. & Ohio R.R. Co.</u>, <u>supra</u>, 652 F.2d at 1020. This much has not been called into doubt by defendant's motion; even if it had, Mr. King's Declaration would be sufficient to dispel it (King Decl., ¶¶30-33).

## II.   __Mr. King Engaged In Protected Opposition__.

The 1972 amendments to Title VII made the statute applicable to the federal government and required Executive agencies to "maintain an affirmative action program of equal employment opportunity."   42 U.S.C. §2000e-16(b)(1).   There were two purposes behind this requirement.   One, as specifically recognized by the EEOC in implementing the government-wide requirement to implement affirmative employment plans, was to "eliminate the effects of past and present employment discrimination … in the federal service" (Memorandum, EEOC Office of Program Operations, Oct. 18, 1989) (King Decl., ¶12, Att. A at 1).   The second was promoting affirmative employment activities (Id., ¶¶11-12).   Both objectives further the intent of Congress in amending Title VII, which was "to act against … discrimination within … federal agencies."   Thompson v. Sawyer, supra, 678 F.2d at 288.

The opposition clause of Title VII makes it unlawful for "an employer to discriminate against any of his employees … because [the employee] has opposed any practice made an unlawful employment practice by this subchapter."   42 U.S.C. §2000e-16 (incorporating 42 U.S.C. § 2000e-3(a)).   The D.C. Circuit has specifically held that the protection of the opposition clause extends to employees who reasonably believe that their employer's affirmative action programs violate Title VII.   Whether an employee was correct that the employment practices he opposed violated Title VII is irrelevant not only at the dispositive

motion stage, but on the merits as well. This is so because: "Characterization of the employee's" opposition as being a "mistake … of fact or of law" does not affect the protection afforded by the opposition clause." Parker v. Balt. & Ohio R.R. Co., supra, 652 F.2d at 1020. All this is required is that the employee's "[o]pposition" be "based on reasonable belief." Id.

Without doubt, Mr. King reasonably believed that HUD's decision not to renew its Departmentwide Affirmative Employment Program after Fiscal Year 2003 violated the provision of Title VII which specifies that all executive agencies must "maintain an affirmative action program of equal employment opportunity." 42 U.S.C. §2000e-16(b)(1). (King Decl., ¶¶13-20). "The practical effect of" ending the Departmentwide AEP was that "HUD's decades-long effort to end employment discrimination within the agency [would] be grievously undermined" (Id., ¶30). For that reason, Mr. King refused Secretary Jackson's order to sign a Declaration for use in the Worth class action which declared that the FY 2003 AEP would not be "renewed or reissued" (King Decl., ¶30). His refusal was undeniably protected under the opposition clause. Johnson v. University of Cincinnati, supra, 215 F.3d at 576.

Although there is no doubt that Mr. King expressed opposition to HUD's effort to undermine the eradication of employment discrimination by refusing to perform its statutory duty of maintaining an affirmative employment program under 42 U.S.C. §2000e-16(b)(1), defendant has nonetheless moved to dismiss. It reasons that: "Title VII [only] protects an

21

employee from opposing an 'unlawful employment practice,' 42 U.S.C. §2000e-3(a), a term that is limited to specific acts of employment discrimination. Id. §2000e-2(a)" (Def. Mot. at 1). Defendant's argument, which denigrates plaintiff's opposition by describing it as an objection to HUD's "failure … to issue a report," is deeply flawed (Def. Mot. at 11).

Conspicuously absent from defendant's motion is any mention of the D.C. Circuit's decision in Parker v. Balt. & Ohio R.R. Co., 652 F.2d 1012, 1020 (D.C. Cir. 1981). There, the D.C. Circuit reviewed a district court decision which "concluded that [the plaintiff's] opposition to [his employer's] affirmative action plan would not be protected by Title VII." 652 F.2d at 1019. The D.C. Circuit reversed, finding not only that opposition to an employer's affirmative action plan was protected by Title VII, but that the protection did not depend on whether or not the plan itself was lawful. Id.

The D.C. Circuit's decision in Parker is dispositive here. If, as that case holds, a private employee's opposition to his employer's affirmative action plan – a plan not required by Title VII – is protected, then a fortiori, the opposition of a federal employee like Mr. King to his agency's failure to maintain an affirmative employment program in violation of 42 U.S.C. §2000e-16(b)(1) must be protected, as well. Furthermore, the scope of protection provided by the statute to Mr. King does not turn on whether he made a "mistake" about HUD's requirement to renew or

reissue its AEP, but on whether he held a "reasonable belief" that HUD's refusal to do so violated Title VII.  Id.

This exact result was reached by the Sixth Circuit in Johnson v. University of Cincinnati, supra, 215 F.3d 561.  There, the Sixth Circuit held that the protection of the opposition clause extended to "a high-level affirmative action official" who suffered retaliation "because of [his] support of affirmative-action policies."  215 F.3d at 573, 576.  Mr. King's entitlement to the protection of the opposition clause was no different than the plaintiff's in Johnson and did not turn on the merits of their opposition; but on whether each held "a reasonable and good faith belief that the opposed practices were unlawful … whether or not the challenged practice ultimately is found to be unlawful."  215 F.3d 579-80.  Johnson also plainly held that it is the function of a "jury to decide whether the high-level affirmative action official was discriminated against for his 'advocacy' on behalf of women and minorities," and that it is not susceptible of adjudication on dispositive motion.  215 F.3d at 577 (emphasis in original).

This same reasoning led to the decision in Moyo v. Gomez, 40 F.3d 982 (9th Cir. 1994), cert. denied, 513 U.S. 1081 (1995). There, the Ninth Circuit held that a prison guard who was discharged for refusing to discriminate against inmates was engaged in protected opposition, even though the inmates were not "employees" and were thus outside the coverage of Title VII.  40 F.3d at 985.

> Opposition can, of course, consist of a refusal to
> carry out an order or policy.
>
> It is not necessary, however, that the employment
> practice actually be unlawful; opposition clause
> protection will be accorded 'whenever the opposition
> is based on a '<u>reasonable belief</u>' that the employer
> has engaged in an unlawful employment practice.'
>
> An erroneous belief that an employer engaged in an
> unlawful employment practice is <u>reasonable</u>, and thus
> actionable under §704(a), if premised on a mistake
> made in good faith.  A good-faith mistake may be one
> of fact or of law.

40 F.3d at 984 (emphasis in original) (quoting <u>EEOC v. Crown
Zellerbach Corp.</u>, 720 F.2d 1008, 1013 (9th Cir. 1983).  Relying on
<u>Moyo</u>, the EEOC's Compliance Manual construes the scope of the
opposition clause in this exact manner, and recognizes that
protected opposition includes an employee's refusal to obey an
order that the employee reasonably believes violates Title VII,
even when it does not.  <u>EEOC Compliance Manual</u>, § 8-5 (1998)
(cited by <u>Johnson v. University of Cincinnati</u>, <u>supra</u>, 215 F.3d at
579).  This construction of Title VII is entitled to "great
deference."  <u>Griggs v. Duke Power Co.</u>, 401 U.S. 424, 433-34
(1971).

    Defendant's argument that Mr. King's opposition was not
protected is baseless.  In the attempt to overcome the clear
holding of <u>Parker</u>, <u>Johnson</u>, and <u>Moyo</u>, defendant argues at length
that its construction of the opposition clause is true to the
statute's text, and that plaintiff is attempting to "unilaterally
broaden the statutory scope of Title VII's anti-retaliation
protections" (Def. Mot. at 11).  Defendant has actually reversed

the parties' roles by relying selectively on the actual text of the opposition clause.

Despite defendant's repeated argument, the opposition clause decidedly does _not_ state that its protection extends only to opposition to employment practices made unlawful by 42 U.S.C. §2000e-2(a). On the contrary, it covers opposition to "any practice made an unlawful employment practice <u>by this subchapter</u>." 42 U.S.C. § 2000e-3(a) (emphasis supplied). The definitional section contained in 42 U.S.C. §2000e clearly shows that the term "subchapter" refers to all of Title VII, and not merely to 42 U.S.C. §2000e-3. Congress' specification that the coverage of the opposition clause extended to employment practices made unlawful anywhere in Title VII, not only in 42 U.S.C. §2000e-2, cannot be treated as meaningless surplusage and disregarded. <u>Keene Corp. v. United States</u>, 508 U.S. 200, 208 (1993) ("Where Congress includes particular language in one section of a statute … it is generally presumed that Congress acts intentionally and purposely."); <u>Exxon Corp. v. Hunt</u>, 475 U.S. 355, 369 n.14 (1986); <u>Kungys v. United States</u>, 485 U.S. 759, 778 (1988) (plurality opinion by Scalia, J.). Since HUD's duty to maintain a program of affirmative employment was derived in "the subchapter" of the Civil Rights Act which contains Title VII, 42 U.S.C. §2000e-16(b)(1), Mr. King's construction of the opposition clause is true to the statute.

Defendant's dispositive motion concludes with citations to eight cases which, it contends, support its argument (Def. Mot.

at 10-12).  Every one is a "see" citation.  The only decision issued by the D.C. Circuit pre-dates Parker v. Balt. & Ohio R.R. Co., supra, 652 F.2d 1012.  Pendleton v. Rumsfeld, 628 F.2d 102 (D.C. Cir. 1980).  The lead case cited by defendant, and the only other decision from this jurisdiction, rejected a claim to protection under the opposition clause by an employee "fired for discussing what she found in the evaluations of two other WMATA employees."  Johnson v. WMATA, 355 F. Supp.2d 304, 309 (D.D.C. 2005).  None of the authority cited by defendant refines, much less reinterprets, the D.C. Circuit's decision in Parker, much less the decisions of the Sixth and the Ninth Circuits in Johnson v. University of Cincinnati, supra,[7] and Moyo v. Gomez, supra.

---

[7]    The Sixth Circuit's decision cited by defendant, Holden v. Owens-Illinois, Inc., pre-dated Johnson v. University of Cincinnati, supra, 215 F.3d at 576.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully submits that Defendant's Motion To Dismiss must be denied.

Respectfully submitted,

Robert C. Seldon, Esq.
   D.C. Bar No. 245100
Molly E. Buie, Esq.
   D.C. Bar No. 483767
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W., Suite 305
Washington, D.C.  20004
Ph (202) 955-6968
Fax (202) 318-2287


By:  _____

Counsel for Plaintiff