UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILLIAM C. KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civ. Action No. 05-1074 (RJL) |
| v. | ) | |
| | ) | |
| ALPHONSO R. JACKSON, | ) | |
| Secretary Of Housing And | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF WILLIAM C. KING

I, William C. King, being first duly sworn, do hereby depose and state as follows:

1.) My name is William C. King. I am the plaintiff in this action and make this Declaration in support of Plaintiff's Opposition To Defendant's Motion To Dismiss and to elaborate upon the allegations on my Complaint. It is based on my knowledge gained in my personal capacity, as well as on knowledge which I obtained in the execution of my official duties with the Department of Housing and Urban Development ("HUD").

2.) Until the actions which give rise to the Complaint in this suit, I served as the Director of HUD's Office of Departmental Equal Employment Opportunity. I was a member of the Senior Executive Service and, in recognition of my superior sustained performance, Secretary Jackson approved my promotion from SES Level 2 to SES level 4. In total, I had over 30 years of creditable public service, including five years as the

1

supervisory Assistant General Counsel for Personnel Law in HUD's Office of General Counsel, where his performance was annually rated at the "Outstanding" level. I also served with distinction in various positions of increasing responsibility with the government of the District of Columbia.

3.) The essential functions of my former position as the Director of HUD's Office of Departmental Equal Employment Opportunity are set out in 24 C.F.R. §7.4. In it, I reported directly to the Secretary of Housing and Urban Development, served as the principal advisor to the Secretary and the Deputy Secretary on matters related to HUD's equal employment program, and had nationwide responsibility for HUD's Equal Employment Opportunity and Affirmative Employment programs designed to ensure the enforcement of federal laws which prohibit discrimination and retaliation in federal employment and promote affirmative employment at HUD.

4.) My duties and responsibilities in that position included responsibility for HUD's Departmentwide Equal Employment Opportunity program, codified in 24 C.F.R. Part 7; HUD's administrative EEO complaints process, including the establishment of HUD's Alternative Dispute Resolution program; HUD's reasonable accommodation program and guidelines; and the production and maintenance of HUD's annual Departmentwide Affirmative Employment Program, and for its approval by the Secretary of HUD.

5.) The purposes of HUD's Departmentwide Equal Employment

Opportunity can best be understood by analyzing the core objectives of these three basic functions separately.

6.) HUD's administrative EEO complaints process was first implemented under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, to provide informal counseling and a formal administrative complaints process for HUD employees, former HUD employees, and candidates for HUD employment to raise administrative complaints of discrimination and retaliation arising from their employment, prospective employment, and former employment with HUD. As additional statutes prohibiting discrimination and retaliation in employment were promulgated and/or made applicable to federal agencies, the jurisdiction of the HUD administrative EEO complaints process was expanded to include such statutes within its coverage. Examples of these subsequently promulgated statutes include the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621 et seq.; and the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§701 et seq.

7.) The overall purpose of the HUD administrative EEO complaints process was to make a process readily available to air and resolve complaints of discrimination and retaliation, without the need for formal litigation before the Equal Employment Opportunity Commission or in United States District Court. In furtherance of 29 C.F.R. §1614.102(b)(2), in 1999, the Alternative Dispute Resolution Program was added in order to make mediation available for the resolution of federal sector administrative complaints, a mechanism which proved to be highly

effective.

8.)  The second component of HUD's Departmentwide Equal Employment Opportunity program is its reasonable accommodation program, which included guidelines for reasonable accommodation, as well.  The purpose of this program was to provide well-defined procedures for HUD employees and prospective employees to request reasonable accommodation under the Rehabilitation Act and, by incorporation, the Americans With Disabilities Act, 42 U.S.C. §12112; for agency management to evaluate and, if appropriate, offer reasonable accommodation.

9.)  The third component of HUD's Departmentwide Equal Employment Opportunity program was HUD's annual Departmentwide Affirmative Employment Program ("AEP") which was implemented each Fiscal Year until FY 2004 with the specific approval of the Secretary of Housing and Urban Development.

10.)  The requirement for HUD to implement a Departmentwide AEP was expressly codified in Title VII of the Civil Rights Act, which required all Executive agencies, including HUD, to "maintain an affirmative action program of equal employment opportunity."  42 U.S.C. §2000e-16(b)(1).  HUD's own regulations also provided that the "Office of the Secretary … shall establish, maintain and carry out a plan of affirmative employment (AE) to promote equal opportunity in every aspect of employment policy and practice."  24 C.F.R. §7.4.  The Civil Service Reform Act also requires "each Executive agency to conduct a continuing program for the recruitment of members of

minorities for positions in the agency." 5 U.S.C. §7202(c)(1). The U.S. Office of Personnel Management (OPM) administers this statutory provision through the Federal Equal Opportunity Recruitment Program (FEORP) and requires the same demographic data as the EEOC mandated AEP under MD-714.

11.) Congress delegated the authority to administer the provisions of Title VII which required executive agencies "to maintain an affirmative action program of equal employment opportunity" to the Equal Employment Opportunity Commission ("EEOC"). The mechanism by which the EEOC oversaw this program was Management Directive ("MD") 714.

12.) In unequivocal language, the EEOC recognized that:

> Clearly, the historical intent of affirmative action in the federal service is to eliminate the effects of past and present employment discrimination against minorities and females.

(Memorandum, EEOC Office of Program Operations, Oct. 18, 1989) (Att. A at 1). Thus, the aim of HUD's AEP was inseparable from, and an integral part of, the overall objective of the federal government of ending employment discrimination in federal executive departments and agencies.

13.) In keeping with this policy, the overarching purpose of HUD's Departmentwide AEP was to codify the commitment of the Secretary of HUD "to prohibit discrimination" in employment by eliminating and remedying the effects of long-standing employment discrimination that limited equal employment opportunity for minorities and women (Att. B at D-3).

14.) This much can easily be seen from the Fiscal Year 2003

Departmentwide AEP (Att. B), which I was responsible for implementing, upon securing approval from the Secretary of HUD.

15.) The FY 2003 AEP, like its predecessors, began by recognizing that core purpose was evaluating HUD's workforce in order "to identify any instances of under-representation (Manifest imbalance and Conspicuous absence" in the Department's work force, and to surface any barriers that would impede equality of employment for minorities and women" (Id. at D-1). In order words, the purpose of the AEP was to utilize statistical data to identify occupational categories from which minorities and woman had been excluded on account of current and historic discrimination, to promote affirmative employment, and to set out "the objectives, action items, and numerical goals targeted to correct imbalances and remove barriers that impede progress in [HUD's] AEP and within the Department" (Id.).

16.) The AEP continued and committed HUD to use "Special Employment Programs to correct the under representation of minorities, women, and persons with disabilities" in HUD, as well as "to determine any barriers to full equal employment" and "to remove those barriers" (Att. B at D-4). "AEP Plan goals and objectives" were operative in "recruitment, hiring, training, reassignment, and promotion" (Id.). All of these objectives were part of the overall objective of HUD and the Executive Branch of eliminating discrimination and the past effects of discrimination in federal employment.

17.) The FY 2003 AEP also addressed other specific

discriminatory practices and reaffirmed HUD's commitment to their
eradication. It confirmed, for example, that "harassment based
on race, color, religion, sex," and other protected categories
would "not be tolerated" and that any HUD employee "found to have
engaged in harassment" should "expect appropriate disciplinary
action" (Att. B at D-5).

18.) "Sexual harassment" was identified as a particularly
egregious "form of sex discrimination" and warned that certain
"advances may even result in criminal charges" (Att. B at D-6).
As the AEP stated: "Sexual Harassment is a form of sex
discrimination and violated Title VII" and set forth a detailed
plan for the prevention of unlawful sexual harassment (Id. at DI-
6, 7).

19.) The AEP also reaffirmed HUD's policy to assure equal
employment opportunity for "persons with disabilities" (Att. B at
D-6).

20.) In furtherance of the overall objective of ending
discrimination and the effects of past discrimination in
employment at HUD, the FY AEP contained an extensive analysis of
the representation of minorities and women in the occupational
categories represented in HUD's workforce (Att. B at DII-1-DIV-
6). Where significant imbalances existed, "numerical objectives"
for increased representation of minorities and/or women were
established (Id. at DII-17, 22, 23, 24, 25-39).

21.) HUD's annual development and implementation of a
Departmentwide AEP came under legal challenge in a class suit

initiated on August 8, 2002, entitled Worth v. Martinez, et al., Civil Action No. 02-1576 (D.D.C.) ("the Worth class action").

22.) The Worth class action sought "injunctive and declaratory relief on behalf of current and future … white male individuals who are employees" of HUD "and other federal departments and agencies" who, according the First Amended Complaint, "have been repeatedly subjected to affirmative action employment plans that discriminate on the basis of race, ethnicity and gender in violation of" the Fifth Amendment to the Constitution and Title VII of the Civil Rights Act, as amended (Att. C). Former HUD Secretary Mel Martinez and Equal Employment Opportunity Commission Chair Cari Dominguez were named as defendants.

23.) Among the stated objectives of the Worth class action was a "permanent injunction prohibiting" HUD from utilizing its Affirmative Employment Plan "to make hiring, promotion, or other employment decisions."

24.) One of the specific targets of the Worth class plaintiffs was the HUD Annual Departmentwide AEP, the FY 2003 version of which was discussed above and attached to this Declaration as Attachment B.

25.) On October 8, 2002, defendants Martinez and Dominguez filed their first motion to dismiss the Worth class action on a number of grounds, among them standing and injury-in-fact.

26.) On August 20, 2003, the district court entered an Order denying defendants' motion to dismiss and ordering

defendants to file a brief discussing the continued effect of EEOC Management Directive ("MD") 714 after October 1, 2003.

27.) As discussed earlier, EEOC MD-714 was issued in 1987 and required all federal agencies covered by Title VII, including HUD, to submit data concerning minority and female recruitment, hiring, and employment, and establish and maintain affirmative employment programs of equal employment opportunity, as required under Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16(b)(1).

28.) Effective October 1, 2003, MD-714 was superseded by MD-715, a directive that, except for issues related to physical disability, was silent as it relates to federal agencies' maintenance of affirmative employment programs of equal employment opportunity. In several instances, MD-715 makes reference to future guidance that would be provided to federal agencies. In that context, I did not want to do anything that would hinder HUD's ability to fulfill its affirmative employment responsibilities under 42 USC or 5 USC.

29.) In response to the district court's Order of August 20, 2003, HUD Secretary Jackson (then, the Deputy Secretary) directed me to execute a Declaration under penalty of perjury which, in pertinent part, stated:

> Pursuant to EEOC Management Directive 714 ('MD-714'), HUD's Fiscal Year ('FY') 2003 Affirmative Employment Plan ('AEP') expires on September 30, 2003.

> The FY 2003 HUD AEP will not be renewed or reissued.

(Att. D).

30.) The practical effect of the declaration was that no AEP and update would be completed for FY 2004, which would cause HUD's decades-long effort to end employment discrimination within the agency to be grievously undermined.

31.) In the absence of any statutory or regulatory changes, I refused to sign the foregoing Declaration, on the ground that the EEOC guidance in MD-715 was unclear with regard to how federal agencies would fulfill their responsibility to maintain a program of affirmative employment for recruitment and hiring the aims of which included eliminating and remedying discrimination in employment and the effects of past discrimination.

32.) On September 9, 2003, upon learning that I had refused to sign the foregoing Declaration in the Worth class action, HUD Secretary Jackson directed me to sign it under penalty of being fired for insubordination.

33.) I refused to execute the foregoing Declaration, because HUD's failure to have an affirmative employment plan in place would violate Title VII, 42 U.S.C. §2000e-16(b)(1); HUD regulations, 24 C.F.R. §7.4; and the Civil Service Reform Act, 5 U.S.C. §7202(c)(1), and the overall purposes of Title VII to eliminate and remedy discrimination at HUD.

34.) My refusal to execute the foregoing Declaration conducted privately, respectfully, and without compromising HUD's defense of the Worth class action in any manner, shape, or respect.  Indeed, HUD continued to defend the Worth class action

action and recently secured its dismissal effectively without my having executed the foregoing Declaration.

35.) Nonetheless, on September 9, 2003, Secretary Jackson advised me that unless I resigned, I would be fired for insubordination for refusing his direct order to execute the foregoing Declaration.

36.) Faced with this choice, on September 10, 2003, I submitted my resignation from his position and from HUD, effective September 30, 2003 (Att. E).

37.) On September 11, 2003, Secretary Jackson accepted my resignation and placed me on administrative leave, thereby relieving Mr. King of all duties and responsibilities (Att. F).

38.) On September 29, 2003, in accordance with federal personnel law which provides that a resignation from federal service may be withdrawn before it becomes effective, I withdrew my resignation (Att. G). I did so in the belief that Secretary Jackson had reconsidered his ultimatum that unless I resigned, I would be fired for refusing the direct order to execute a Declaration in the Worth class action.

39.) Upon learning that I had withdrawn my resignation, on October 1, 2003, Secretary Jackson relieved me of all duties and responsibilities Director of HUD's Office of Departmental Equal Employment Opportunity; detailed me to a position outside of my office; proposed to discharge me from HUD for insubordination, specifically refusing his direct order to execute a Declaration

in the <u>Worth</u> class action, and arranged for former Secretary
Martinez to discharge me (Att. H).

40.) Before defendant issued the proposal to discharge me
for refusing Secretary Jackson's direct order to execute a
Declaration in the <u>Worth</u> class action, former Secretary Martinez
had irrevocably predetermined to discharge me for
insubordination.

41.) With the decision to discharge me from HUD having
already been made, and as a licensed attorney and a professional
manager with an outstanding record of performance and an
unblemished record of conduct with over 30 years of public
service, I had no choice but to resign before being discharged,
in order to protect my professional reputation and my future
career opportunities.

42.) Further, as of October 1, 2003, HUD had obtained
authority from the Office of Personnel Management to permit early
retirement. To be eligible, agency employees needed to be 50
years of age or older and have 20 years of federal service, or
have 25 years of federal service regardless of age, criteria
which I satisfied at that time. Had I waited to be removed from
the service before resigning, I would no longer be eligible for
early retirement and would be deprived of means to support myself
and my family.

43.) Accordingly, effective October 21, 2003, I was coerced
into resigning and was constructively discharged from HUD.

I hereby declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information, and belief.


_____
William C. King
Executed on August 49, 2005.

**ATTACHMENT A**

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Washington, D.C. 20507

OCT 18 1989

# MEMORANDUM

**TO:** Directors of EEO

**FROM:** James H. Troy, Director
Office of Program Operations

**SUBJECT:** AFFIRMATIVE EMPLOYMENT PLANS - EEOC MD-714

Our review of the multi-year affirmative employment plans submitted in accordance with
EEOC Management Directive 714 revealed that some clarification of the directive's
language and intent is necessary. Some agencies apparently concluded that the inclusion of
White Males in our definition of EEO Groups was a signal requiring the development of
specific objectives for that group when manifest imbalance or conspicuous absence was
determined. Therefore, these agencies' affirmative employment plans contained numerical
objectives for this group in clerical and other low graded PATCO occupations.

Management Directive 714, while identifying white males as an EEO group, does not
intend that such objectives be developed as a part of the required multi-year affirmative
employment plans. Such objectives appear to be in contradiction to the intent and
language of Section 717 of the Civil Rights Act, Executive Order 11478, all affirmative
action guidelines, as well as the legislative and executive history surrounding the
development and implementation of these documents. Clearly, the historical intent of
affirmative action in the federal service is to eliminate the effects of past and present
employment discrimination against minorities and females.

The addition of White Males to the list of identified EEO groups in MD-714 is to guide
your development of complete workforce profiles and analyses. The directive at Page 2,
specifically names the groups for which specific objectives, including numerical objectives,
are expected by the Commission. We urge your strict adherence to the directive on this
point and will take necessary action to clarify the language in other parts of the directive
as necessary.

Finally, our assessment of the distribution of EEO groups in the Federal service, as
developed from our careful analysis of the first multi-year cycle (FY'82 through FY'87),
does not support the inclusion of white males as a group to which specific objectives
should be directed. It is clear that in most agencies all of minority EEO groups and
females have increased their overall representation over the past 6 years. However, the gap
between their representation in the total workforce and their representation in the upper



Received

les and policy making positions continues to be extremely wide showing little, if any, improvement during those years. Therefore, we believe that most agencies should be acutely concerned with internal upward movement of minority group members and females who are already aboard, rather than large numbers of new hires. If we are accurate in this assessment, as it relates to your agency, the focus of any specific objectives for white males would be at the lowest occupational levels and thereby require extreme hiring activity to correct any imbalance. Clearly, our review of your workforce analyses does not suggest any such imbalances at the upper occupational levels, where we believe most Federal attention should be paid now and into the 1990s.

Affirmative employment programs in the federal sector are to provide sound occupational opportunities to those groups or classes who have not been in the mainstream of the workplace in the past. These programs find their history in orders, laws, regulations, and judicial precedent that speak to these goals. The Commission's intent is to provide you the utmost flexibility in developing and implementing planned actions to give life to your programs in keeping with these underlying guidelines. To date these guidelines target specific minority groups and females for the planned actions and objectives of federal agencies. So, in our view, should your multi-year affirmative employment plans and programs.

Any confusion regarding the intent of Management Directive 714 should be clarified by this memorandum. We trust that it will be shared with all Agency personnel who are responsible in any manner for development or implementation of plans and programs required by Management Directive 714.

cc:    Federal Sector Programs
       EEOC District Directors
       EEOC Federal Affirmative Action Units

2

**ATTACHMENT C**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DENNIS R. WORTH,<br>AND ALL OTHERS SIMILARLY SITUATED,<br><br>      Plaintiffs,<br><br>      v.<br><br>MEL MARTINEZ,<br>     in his official capacity as<br>     Secretary and Head of the<br>     UNITED STATES DEPARTMENT OF<br>     HOUSING AND URBAN DEVELOPMENT<br><br>CARI M. DOMINGUEZ,<br>     in her official capacity as<br>     Chair and Head of the<br>     UNITED STATES EQUAL EMPLOYMENT<br>     OPPORTUNITY COMMISSION<br><br>      Defendants. | C. A. No. 02-1576 (RBW) |

## FIRST AMENDED COMPLAINT

### Nature of Complaint

1.      This is a class action for injunctive and declaratory relief brought on behalf of

current and future employees of the U.S. Department of Housing and Urban Development

("HUD") and other federal departments and agencies, as described herein.  Dennis Worth

("Worth") and all similarly situated employees of HUD and the federal government (collectively,

"Plaintiffs") have been repeatedly subjected to affirmative employment plans that discriminate

on the basis of race, ethnicity and gender in violation of their Equal Protection rights under the Fifth Amendment of the United States Constitution and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). (As used in this Complaint, the term "race" will also include the term "ethnicity.") If defendants are not enjoined, Plaintiff Worth and the class will continue to be subjected to discrimination.

### Jurisdiction and Venue

2.      This court has subject matter jurisdiction of this complaint and these claims pursuant to 28 U.S.C. § 1331, 42 U.S.C. §§ 2000e-16(d) and 2000e-5(f)(3), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

### Parties

4.      Plaintiff Worth is a current employee of HUD, and he is employed as a GS-13 Senior Project Manager in the St. Louis, MO office.  He is white.

5.      Plaintiff Worth has applied for new positions and promotions at HUD, and intends to apply for new positions and promotions at HUD on a regular basis in the future.

6.      Defendant Mel Martinez ("Martinez") is the Secretary of the Department of Housing and Urban Development ("HUD") and is named as a defendant in this action in his official capacity as the head of HUD.  HUD is headquartered in Washington, DC and is an executive department of the Federal Government of the United States of America.  As the head of HUD, Martinez directs, approves, and/or is responsible for all official actions at HUD.

2

7.    Defendant Cari M. Dominguez ("Dominguez") is the Chair of the Equal

Employment Opportunity Commission ("EEOC") and is named as a defendant in this action in

her official capacity as the head of EEOC.  EEOC is headquartered in Washington, DC and is an

independent agency of the United States of America.  As the head of EEOC, Dominguez directs,

approves, and/or is responsible for all official actions at EEOC.

### Background

8.    Section 717(a) of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e et seq. ("Section 717"), requires, in part, that "[a]ll personnel actions affecting

employees or applicants for employment [in various federal government agencies and

departments] be made free from any discrimination based on race, color, religion, sex, or

national origin."  Section 717(b) also obligates, in part, every department and agency to

"maintain an affirmative program of equal employment opportunity for all such employees."

9.    Supposedly for the purpose of carrying out the mandate of Section 717(b), the

Equal Employment Opportunity Commission promulgates regulations which require, inter alia,

that every federal department and agency implement, and submit to the EEOC, an "affirmative

employment plan" ("AEP"), which the EEOC reviews, evaluates, and approves.

10.    The EEOC issued compliance guidance in 1987 to all federal departments and

agencies in an Equal Employment Opportunity Management Directive entitled "MD-714."

EEOC's MD-714 obligates all federal departments and agencies to create an "affirmative

employment plan for minorities and women" which is to identify alleged instances of "manifest

imbalance" and "conspicuous absence" of women and racial minorities, by gender and race, and

3

establish "goals" and "target dates" in order to eliminate such alleged "underrepresentation" at all organizational levels.

11.    The EEOC's MD-714 makes department and agency heads accountable for the successful implementation of their AEPs, and requires them in turn to review, evaluate, and hold accountable all subordinate officials, managers, and employees.

12.    The EEOC's MD-714 has never been revised to reflect the higher scrutiny standard announced in Adarand v. Pena, 515 U.S. 200 (1995), for all race-based classifications by the federal government.

13.    Supposedly pursuant to its oversight and enforcement authority under Section 717(b), EEOC requires, cajoles and induces federal departments and agencies, such as HUD, to discriminate on the basis of race and gender in employment.

14.    In accordance with MD-714's requirements, the HUD AEP establishes certain racial and gender goals in employment, coupled with deadlines and target dates. HUD reviews and evaluates managers and supervisors, and provides performance appraisals and incentives, based on achieving these goals. Managers who fail to perform may receive lower evaluation ratings, a reduced or eliminated bonus, may be reassigned or lose a grade, and ultimately may be terminated.

15.    In its employment practices, HUD favors non-white racial groups over whites, and women over men.

16.    HUD was established as a federal executive department on or about October 9, 1965. Prior to that date, Presidents Truman and Johnson promulgated Executive Order 9980 in 1948 and its successor Executive Order 11246 in September of 1965, both of which forbade discrimination on the basis of race in recruitment, hiring, promotions and other employment

4

practices in federal employment. Sex was added to the list of prohibited bases of discrimination by E.O. 11375 in October of 1967. On information and belief, HUD has at all times maintained an official policy of non-discrimination against minorities and women, and in addition has employed affirmative employment policies to hire, elevate and promote them. There is no history, record or legacy of racial discrimination in employment against minorities or women at HUD.

17.    HUD did not, and does not, have a strong basis in evidence of the continuing effects of past or present discrimination by HUD that would justify racial or gender preferences.

18.    HUD did not, and does not, have a compelling or important governmental interest that justifies its race-conscious and gender-conscious programs and classifications. Assuming arguendo that HUD had a legitimate interest, its use of race and gender is not properly tailored to meet any such interest.

19.    HUD provides employment goals, target deadlines, managerial appraisals and incentives only for alleged "underrepresented" racial minorities and women, and not for whites or males, even when whites or males are "underrepresented" in a job category.

20.    HUD provides employment goals, target deadlines, managerial appraisals and incentives whenever there is an "underrepresentation," regardless of its size.

21.    HUD does not discontinue its racial and gender preferences after any alleged "underrepresentation" is eliminated. HUD instead resumes setting employment goals for the preferred racial and gender groups whenever any alleged disparity reappears, regardless of its size.

22.    HUD's employment policies, practices and programs are unconstitutional because they contain and create impermissible race-conscious and gender-conscious preferences and classifications in recruitment, hiring, training, promotion and separation.

23.    The EEOC has approved and sanctioned HUD's AEP, including its race-conscious and gender-conscious provisions. By lending its imprimatur to these preferences, rather than seeking to eliminate them, the EEOC has encouraged and aided HUD in promulgating those illegal preferences.

24.    Plaintiff Worth has applied, or wanted to apply, for promotions as well as internal promotions (i.e., new positions available at higher grade levels) at HUD but has been unable to advance because of HUD's emphasis on meeting racial and gender employment targets.

25.    Among the opportunities that Plaintiff Worth has been unable to compete for on an equal footing, regardless of race or gender, are for the position of Multifamily Project Manager in 1997, two Senior Project Manager positions in 1998, and a Systems Analyst position in 2002. All of these opportunities were in HUD's St. Louis office.

26.    Plaintiff Worth also has not been eligible for extra recruitment efforts and targeted training programs designed to groom employees for higher-level positions that have been extended to members of the preferred racial groups and women.

27.    HUD's employment practices and policies continue to affect Plaintiffs. HUD continues to set employment goals, as evidenced by HUD's Department-wide Affirmative Employment Program Fiscal Year 2001 and 2002 Update Reports. Plaintiff Worth intends to continue to apply for new positions and promotion within HUD despite these HUD programs. He would apply more frequently if HUD's illegal policies are terminated. If Defendants are not enjoined, they will continue to violate Plaintiffs' equal protection and civil rights.

6

**Class Action Allegations**

28.    Pursuant to Fed. R. Civ. P. 23, plaintiff Worth brings these claims on behalf of a

class (the "Class") consisting of white, male individuals who are employees of federal

departments and agencies that promulgate AEPs subject to approval by the EEOC, who are

applicants for employment, promotion or transfer at these federal departments and agencies, and

who will in the future be subject to their respective federal departments' and agencies' race or

gender-conscious recruitment, hiring, training, promotion and separation policies and practices

promulgated pursuant to their AEPs. He also seeks to represent a sub-class of white males who

are applicants for employment, promotion or transfer at HUD, and who will in the future be

subject to HUD's race or gender-conscious recruitment, hiring, training, promotion and

separation policies and practices, promulgated pursuant to its AEP.

29.    Common questions of law and fact exist as to all members of the Class. Among

the questions of law and fact common to the Class is whether Defendants violated, and are

violating, the Fifth Amendment to the United States Constitution and federal laws by

discriminating against Plaintiff Worth and the Class on the basis of race or gender.

30.    Plaintiff's claims are typical of the claims of the members of the Class, and

Plaintiff Worth is an adequate representative of the Class. Plaintiff Worth and members of the

Class have sustained injuries because of Defendants' unlawful activities alleged herein, and will

sustain such injuries in the future unless Defendants are enjoined. Plaintiff Worth has retained

counsel competent and experienced in race and gender discrimination litigation and intends to

prosecute this action vigorously. Plaintiff Worth will fairly and adequately protect the interests

of the Class.

31.    The Class is so numerous that joinder of all its members is impracticable.  A class action is superior to other available means for the fair and efficient adjudication of this controversy.

32.    Pursuant to Fed. R. Civ. P. 23(b)(2), Defendants' actions are generally applicable to the class of white males making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## Count I

### (Violation of Plaintiffs' Due Process Rights)

33.    Plaintiffs incorporate by reference paragraphs 1 through 32 above.

34.    Defendants intentionally have discriminated against Plaintiff Worth and the class he represents on the basis of his race and gender, and will continue to discriminate if not enjoined.

35.    Defendants' actions, policies and practices violate the Due Process Clause of the Fifth Amendment of the Constitution.

36.    Plaintiff Worth and the class he represents will suffer additional irreparable harm if Defendants' scheme of racial and gender preferences continues and Plaintiffs are prevented from competing for federal employment on an equal footing with, and receiving the same benefits and opportunities as, women and members of preferred racial and ethnic groups. Plaintiffs do not have an adequate remedy at law.

## Count II

### (Violation of Title VII)

8

37.    Plaintiffs incorporate by reference paragraphs 1 through 36 above.

38.    Pursuant to 42 U.S.C. §2000e-16(c), Plaintiff Worth filed discrimination charges with HUD challenging defendant Martinez's conduct as described in this complaint, as violative of Section 717(a) of Title VII.  More than 180 days have passed since the initial charges were filed.

39.    Pursuant to 42 U.S.C. §2000e-16(c), Plaintiff Worth filed discrimination charges with EEOC challenging defendant Dominguez's conduct as described in this complaint, as violative of Section 717(a) of Title VII.  Those charges were dismissed on April 15, 2003.

40.    Defendants have violated Title VII, and will continue to violate Title VII if not enjoined, because they create and maintain impermissible race-conscious and gender-conscious programs and classifications.  Accordingly, defendants have taken personnel actions in violation of Section 717(a)'s mandate that they be "free from any discrimination based on race, color, religion, sex, or national origin."

## Count III

## (Constitutionality of Title VII as applied)

41.    Plaintiffs incorporate by reference paragraphs 1 through 40 above.

42.    Defendants Martinez and Dominguez's application and enforcement of Section 717(b) of Title VII violates 42 U.S.C. §717(a) and the Constitution.

43.    Alternatively, Title VII permits conduct that the Constitution prohibits.

44.    Title VII as applied to Plaintiff Worth and the members of the class is unconstitutional.

9

**Request For Relief**

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment for Plaintiffs and award the following relief:

(a)    A permanent injunction prohibiting Defendant Martinez, as head of HUD, and his employees, agents, officers, representatives and servants from using the AEP to make hiring, promotion and other employment decisions;

(b)    A permanent injunction against Defendant Martinez, as head of HUD, and his employees, agents, officers, representatives and servants from discriminating on the basis of race and gender in violation of the Fifth Amendment and Section 717(a), and violating Plaintiffs' constitutional and statutory rights;

(c)    A declaratory judgment that Defendants Martinez and Dominguez, as heads of their respective departments, violated, and are violating, Plaintiffs' rights to Equal Protection under the Fifth Amendment and Title VII;

(d)    A permanent injunction against Defendant Dominguez preventing her, as head of EEOC, from encouraging and inducing other federal departments and agencies to engage in illegal race and gender discrimination, and sanctioning and approving such illegal discrimination;

(e)    An award to Plaintiffs for attorneys' fees and costs of suit; and

(f)    An award of such other relief as the Court may deem just and proper.

10

Respectfully submitted,

_____

Michael E. Rosman (D.C. Bar No. 454002)
Silvio A. Krvaric (D.C. Bar No. 473529)

Center for Individual Rights
1233 20th Street, N.W., Suite 300
Washington, D.C. 20036

Attorneys for Plaintiffs

**ATTACHMENT D**

**EXHIBIT F13**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DENNIS R. WORTH, et al.,                                )
                                                        )
                    Plaintiffs,                         )
                                                        )
        v.                                              )
                                                        )
MEL MARTINEZ, Secretary, United States                  )       Civil Action No.
Department of Housing and Urban Development,            )       1:02CV01576 (RBW)
and CARI M. DOMINGUEZ, Chair, United                    )
States Equal Employment Opportunity                     )
Commission,                                             )
                                                        )
                    Defendants.                         )
                                                        )

## DECLARATION OF WILLIAM C. KING

I, WILLIAM C. KING declare as follows:

1.      I hold the position of Director of the Office of Departmental Equal Employment Opportunity ("ODEEO") in the United States Department of Housing & Urban Development (HUD). The ODEEO is responsible for compliance and enforcement activities under Title VII of the Civil Rights Act of 1964, as amended (Public Law 92-261); Executive Order 11478, as amended; the Age Discrimination in Employment Act, as amended; and the Equal Employment Opportunity Commission (EEOC) and its management directives and regulations, and Departmental Regulations as they relate to, or affect, the enforcement of equal employment opportunity for HUD employees and applicants for employment.

2.      Pursuant to EEOC Management Directive 714 ("MD-714"), HUD's Fiscal Year ("FY") 2003 Affirmative Employment Plan ("AEP") expires on September 30, 2003.

1

BROIDA AND ASSOCIATE
PAGE  09/1

3.    The FY 2003 HUD AEP will not be renewed or reissued.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September ___, 2003.

William C. King

2

**ATTACHMENT E**

**EXHIBIT F10**

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
THE OFFICE OF THE SECRETARY
WASHINGTON, DC 20410-0001

Office of Departmental
Equal Employment Opportunity

September 10, 2003

MEMORANDUM FOR: Alphonso Jackson, Deputy Secretary, SD

FROM: William C. King, Director, Office of Departmental Equal
Employment Opportunity, U

SUBJECT: Resignation

As requested by you late yesterday at a meeting on a matter relating to the case of <u>Worth v. HUD and EEOC,</u> 1:02CV01576 (D.C.C.), I hereby tender my resignation from the position of Director, Office of Departmental Equal Employment Opportunity, U.S. Department of Housing and Urban Development, effective September 30, 2003. That which I was asked to do presents moral, ethical and professional responsibility considerations that I will not compromise.

Thank you and Secretary Martinez for the opportunity to serve the Department and the American people in this important and critical position.

cc: Camille Pierce, SD

**ATTACHMENT F**

**EXHIBIT F11**



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
THE DEPUTY SECRETARY
WASHINGTON, D.C. 20410-0050

SEP 11 2003

Mr. William C. King
Director
Office of Departmental
Equal Employment Opportunity
451 7th Street, SW
Washington, DC 20410

Dear Mr. King,

Pursuant to your letter of September 10, 2003, today I am accepting your resignation effective September 30, 2003. In order to assure continuity of operations, I am placing you on administrative leave beginning September 15, 2003.

Thank you for your service to the Department.

Sincerely,

Alphonso R. Jackson

**ATTACHMENT G**

BAACH
ROBINSON
&LEWIS
PLLC

September 29, 2003

JEFFREY D. ROBINSON
jeffrey.robinson@barole.com

## BY FACSIMILE AND FIRST-CLASS MAIL

Camille Pierce
Staff Director
Office of the Deputy Secretary
U.S. Department of Housing and
Urban Development
451 7th Street SW. Suite 10100
Washington, DC 20410-3000

Re:    William C. King, Withdrawal of Resignation

Dear Ms. Pierce:

Enclosed please find a memorandum from William C. King, Director Office of Departmental Equal Employment Opportunity, withdrawing the resignation he submitted on September 10, 2003.

After our conversation this morning, I attempted to contact the persons you suggested in the General Counsel's office but I did not receive a response. Given the absence of a response, I am sending this withdrawal to you directly.

After some reflection, Mr. King has concluded that he should not resign from the Department at this time. The declaration that he was asked to sign committed the Department in a manner that was beyond his authority as Director Office of Departmental Equal Employment Opportunity.    He is confident that the Department will reach the same conclusion when it reviews this matter.

As I stated during our brief conversation, Mr. King remains interested in resolving the issues that led to the demand that he resign in a mutually agreeable manner. Please have the appropriate person contact me so that we can discuss such a resolution.

Sincerely,

Jeffrey D. Robinson

Enclosures

 U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
THE OFFICE OF THE SECRETARY
WASHINGTON, DC 20410-3000

Office of Departmental
Equal Employment Opportunity

September 29, 2003

MEMORANDUM FOR: Alphonso Jackson, Deputy Secretary, SD

FROM: William C. King, Director, Office of Departmental Equal
Employment Opportunity, U

SUBJECT: Withdrawal of Resignation

The resignation that I submitted on September 10, 2003 is hereby withdrawn.

**ATTACHMENT H**



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
THE DEPUTY SECRETARY
WASHINGTON, D.C. 20410-0050

OCT  1  2003

Mr. William C. King
10012 Tenbrook Drive
Silver Spring, Maryland  20901-2151

Dear Mr. King:

      This is an advance notice of at least 30 calendar days that I am proposing to remove you from your position of Director, Office of Departmental Equal Employment Opportunity, U.S. Department of Housing and Urban Development (HUD), and the Federal service. This notice is issued in accordance with Part 752 of Title 5 of the Code of Federal Regulations and HUD Handbook 0752.02 REV-3.

      This proposal is based on the following charge and specification, which serve as the basis for this proposal.

**CHARGE 1: INSUBORDINATION**

      Following consultation with the Office of General Counsel, I was informed that the Justice Department requested that HUD submit a declaration in a pending matter before the U.S. District Court for the District of Columbia. On Tuesday, September 9, 2003, I directed you to sign a declaration relating to the case of Worth v. HUD and Equal Employment Opportunity Commission, 1:02CV01576 (D.C.D.) (enclosure 1). Although you acknowledged that the declaration contained only factual information, you refused to sign the declaration. You indicated that your signature on the declaration would compromise your moral, ethical, and professional responsibilities. After further discussion, I directed you to sign the declaration. Again, you refused to sign it. You were given an opportunity to re-think your decision overnight. The following day, you tendered your resignation in writing citing an effective date of September 30, 2003 (enclosure 2). By letter dated September 11, 2003, I acknowledged receipt of your letter and notified you of my acceptance of your resignation (enclosure 3). On September 30, 2003, the Department received a letter withdrawing your resignation (enclosure 4).

      The above cited specification constitutes the charge of insubordination. I find this behavior to be extremely serious, and your reasons for refusing to sign the declaration are unacceptable. As a Senior Executive Service member, you are part of an elite group of senior level managers who have a high degree of responsibility and where good judgment is expected in the execution of your official duties. To the contrary, your insubordinate behavior as

described in the charge and related specification demonstrate that you have neglected to maintain this expected level of responsibility. You should have known that your failure to sign the declaration was a neglect of your official duties. Your failure to follow my direct order is insubordinate, and also undermines my authority to run this Department efficiently. As a long time Federal Government employee, you should be aware of these requirements and work principles. Therefore, I find this proposed action to be warranted and necessary in order to promote the efficiency of the service.

In making my determination to propose your removal, I considered all of the factors in Douglas v. Veterans Administration, 5 MSPR 280 (1981). However, I find the following aggravating factors to be the most relevant:

1. The nature and seriousness of the offense, its relationship to your job duties, position and responsibilities;

2. The clarity with which you were on notice that your refusal to carry out my direct order was insubordinate behavior;

3. Your repeated refusal to carry out my direct order the following day;

4. My loss of confidence and trust in your ability to carry out your official job duties efficiently and effectively in the future; and

5. The consistency of the penalty with the Department's Table of Offenses and Penalties (HUD Handbook 752.2, REV-3), which states that greater or lesser penalties than suggested may be imposed as circumstances warrant.

I have found most relevant mitigating factors to be your 30 years of Federal service, your past work record which includes good performance, and your professional considerations in refusing to carry out my direct order. However, I find no sanction other than removal to be the minimum action necessary to deter such behavior in the future and promote the efficiency of the service. A copy of the documentation relied upon to support the proposed action is enclosed for your information. This information is also contained in the Official Case File, which is maintained by Earnestine Pruitt, Director, Executive Personnel Management Division, U.S. Department of Housing and Urban Development, Room 2158, 451 7th Street, SW, Washington, D.C. 20410.

If you are experiencing personal problems that are affecting your ability to maintain acceptable conduct, I strongly encourage you to take advantage of the Department's Employee Assistance Program (EAP). The EAP is available to provide confidential counseling and assistance services to all employees in a variety of situations.

To schedule an appointment, you may contact the counselors in the HUD Health Unit, Room 7239; the telephone number is (202) 708-1726. For additional information about the EAP program, you may contact Deborah Rizzo, EAP Manager, on (202) 708-0523. The EAP staff is located in Room 5250. Participation in the EAP is voluntary and strictly confidential.

You have twenty-one (21) calendar days from the date of your receipt of this notice of proposed removal to submit a written response and/or oral response. The Deciding Official, Mel Martinez, Secretary, or his designee will give full and proper consideration to any explanation(s), fact(s), affidavit(s), or rebuttal you furnish in a timely manner. You will be allowed up to 16 hours of official time to prepare an oral and/or written response. If you wish to make a written response, it should be submitted to Earnestine Pruitt, Director, Executive Personnel Management Division, U.S. Department of Housing and Urban Development, 451 Seventh Street, SW, Room 2158, Washington, DC 20410. The envelope should be marked, "To be Opened by Addressee Only." You should also contact Ms. Pruitt if you wish to arrange for an oral response within the twenty-one (21) day response period. Ms. Pruitt may be reach on (202) 708-1381. If you encounter difficulty in preparing your reply within the twenty-one (21) day period, you may request additional time in writing. The request must include sufficient justification to support the need for additional time, and must be made prior to the expiration of the twenty-one (21) day response period. However, if no response is received, the Deciding Official will give a written notice of the decision after the expiration of the time allowed for your response.

The Deciding Official must be notified, in writing, if you have an attorney or other designated representative. If you are otherwise in an active duty status, you may present your oral reply on official time. If your representative is an employee of the Department, he or she may also attend the oral reply session on official time. Your representative may be disallowed if he or she is an employee of the Department, whose activities as representative could cause a conflict of interest or position, or if his or her release would give cause an undue interruption of work or would result in unreasonable costs to the Government.

During the notice period, you will continue to be carried in an active duty status at your present ES salary level. No decision on this matter will be made until all evidence of record, including any timely written and/or oral response has been received. You will be given a letter containing the decision on this matter. It will state a decision to: (1) take the proposed action; (2) lessen the proposed penalty; or (3) not take the proposed action. The Deciding Official will consider any and all explanations, facts, documentation, or rebuttal you furnish in a timely manner in reaching a decision. In preparing and presenting a reply, you are assured freedom from restraint, interference, coercion, discrimination, or reprisal.

4

You will receive a written decision within thirty-five (35) calendar days after receipt of your response, or as soon as practicable following expiration of the time allowed you to respond if you do not respond. If the decision is expected to be delayed beyond that time period, you will be notified and shall continue to be notified at thirty (30) day intervals, thereafter.

Copies of the Handbook and pertinent statutes and regulations governing this action may be reviewed by contacting Earnestine Pruitt on (202) 708-1381.

Sincerely,

Alphonso Jackson

Enclosures

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DENNIS R. WORTH, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| MEL MARTINEZ, Secretary, United States Department of Housing and Urban Development, and CARI M. DOMINGUEZ, Chair, United States Equal Employment Opportunity Commission, | ) ) ) ) ) | Civil Action No. 1:02CV01576 (RBW) |
| Defendants. | ) ) | |

## DECLARATION OF WILLIAM C. KING

I, WILLIAM C. KING declare as follows:

1.    I hold the position of Director of the Office of Departmental Equal Employment Opportunity ("ODEEO") in the United States Department of Housing & Urban Development (HUD). The ODEEO is responsible for compliance and enforcement activities under Title VII of the Civil Rights Act of 1964, as amended (Public Law 92-261); Executive Order 11478, as amended; the Age Discrimination in Employment Act, as amended; and the Equal Employment Opportunity Commission (EEOC) and its management directives and regulations, and Departmental Regulations as they relate to, or affect, the enforcement of equal employment opportunity for HUD employees and applicants for employment.

2.    Pursuant to EEOC Management Directive 714 ("MD-714"), HUD's Fiscal Year ("FY") 2003 Affirmative Employment Plan ("AEP") expires on September 30, 2003.

1

3.    The FY 2003 HUD AEP will not be renewed or reissued.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September ____, 2003.

_____

William C. King

Enclosure 2



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
THE OFFICE OF THE SECRETARY
WASHINGTON, DC 20410-0001

Office of Departmental
Equal Employment Opportunity

September 10, 2003

MEMORANDUM FOR: Alphonso Jackson, Deputy Secretary, SD

FROM: William C. King, Director, Office of Departmental Equal
Employment Opportunity, U

SUBJECT: Resignation

As requested by you late yesterday at a meeting on a matter relating to the case of <u>Worth</u>
<u>v. HUD and EEOC</u>, 1:02CV01576 (D.C.C.), I hereby tender my resignation from the position of
Director, Office of Departmental Equal Employment Opportunity, U.S. Department of Housing
and Urban Development, effective September 30, 2003. That which I was asked to do presents
moral, ethical and professional responsibility considerations that I will not compromise.

Thank you and Secretary Martinez for the opportunity to serve the Department and the
American people in this important and critical position.

cc: Camille Pierce, SD

Enclosure 3



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
THE DEPUTY SECRETARY
WASHINGTON, D.C. 20410-0050

SEP 1 1 2003

Mr. William C. King
Director
Office of Departmental
Equal Employment Opportunity
451 7th Street, SW
Washington, DC 20410

Dear Mr. King,

Pursuant to your letter of September 10, 2003, today I am accepting your resignation effective September 30, 2003. In order to assure continuity of operations, I am placing you on administrative leave beginning September 15, 2003.

Thank you for your service to the Department.

Sincerely,

Alphonso R. Jackson

Enclosure 4

 U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
THE OFFICE OF THE SECRETARY
WASHINGTON, DC 20410-105

Office of Departmental
Equal Employment Opportunity

September 29, 2003

MEMORANDUM FOR: Alphonso Jackson, Deputy Secretary, SD

FROM: William C. King, Director, Office of Departmental Equal
Employment Opportunity, U

SUBJECT: Withdrawal of Resignation

The resignation that I submitted on September 10, 2003 is hereby withdrawn.

BAACH
ROBINSON
&LEWIS
PLLC

JEFFREY D. ROBINSON
jeffrey.robinson@barole.com

September 29, 2003

BY FACSIMILE AND FIRST-CLASS MAIL
Camille Pierce
Staff Director
Office of the Deputy Secretary
U.S. Department of Housing and
    Urban Development
451 7th Street SW, Suite 10100
Washington, DC 20410-3000

                    Re:     William C. King, Withdrawal of Resignation

Dear Ms. Pierce:

          Enclosed please find a memorandum from William C. King, Director Office of Departmental Equal Employment Opportunity, withdrawing the resignation he submitted on September 10, 2003.

          After our conversation this morning, I attempted to contact the persons you suggested in the General Counsel's office but I did not receive a response. Given the absence of a response, I am sending this withdrawal to you directly.

          After some reflection, Mr. King has concluded that he should not resign from the Department at this time. The declaration that he was asked to sign committed the Department in a manner that was beyond his authority as Director Office of Departmental Equal Employment Opportunity.  He is confident that the Department will reach the same conclusion when it reviews this matter.

          As I stated during our brief conversation, Mr. King remains interested in resolving the issues that led to the demand that he resign in a mutually agreeable manner. Please have the appropriate person contact me so that we can discuss such a resolution.

                                        Sincerely,

                                        Jeffrey D. Robinson

Enclosures