**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILLIAM C. KING, )<br>)<br>)<br>       Plaintiff, )<br>)<br>v. )<br>)<br>ALPHONSO R. JACKSON, )<br>  SECRETARY OF HOUSING AND )<br>  URBAN DEVELOPMENT, )<br>)<br>       Defendant. )<br>_____) | Case No. 1:05CV01074 (RJL) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

In his motion to dismiss, defendant Alphonso R. Jackson, Secretary of Housing and Urban Development ("HUD"), demonstrated that the retaliation claim brought by plaintiff William C. King, the former Director of the Office of Departmental Equal Employment Opportunity ("ODEEO") at HUD, must fail as a matter of law because plaintiff failed to allege that he engaged in any statutorily protected activity. Specifically, defendant demonstrated that Title VII's retaliation clause, as relevant here, only protects an employee from opposing an "unlawful employment practice," 42 U.S.C. § 2000e-3(a). Title VII defines an "unlawful employment practice" as one that involves employment discrimination. Id. § 2000e-2(a). Plaintiff has not alleged that his refusal to sign a declaration in defense of a lawsuit against HUD was in opposition to the agency acting in any kind of discriminatory manner. As a matter of law, plaintiff's claim must fail and should be dismissed at this initial stage of the case.

As demonstrated below, the cases relied on by plaintiff are inapposite. Each of the acts at

issue in those cases constituted an "unlawful employment practice," as that phrase is defined by Title VII, because each involved some kind of alleged employment discrimination that the plaintiff in those cases were opposing. Plaintiff, however, does not similarly allege that he was opposing any "unlawful employment practice."

## ARGUMENT

I. **PLAINTIFF HAS FAILED TO ALLEGE THAT HE ENGAGED IN ANY STATUTORILY-PROTECTED ACTIVITY UNDER TITLE VII**.

Plaintiff's complaint arises out of a separate lawsuit, filed on August 8, 2002, and captioned Worth v. Jackson, No. 02cv1576 (D.D.C.), in which a white male HUD employee challenged, under Title VII and the Constitution, the government's Affirmative Employment Plans ("AEPs"), including HUD's, that were in effect at the time pursuant to the Equal Employment Opportunity Commission ("EEOC") Management Directive 714 ("MD-714"). See Memorandum in Support of Defendant's Motion to Dismiss ("Defendant's Memorandum) at 2-4. As Worth progressed, the EEOC issued Management Directive 715 ("MD-715"), which became effective on October 1, 2003, and superseded MD-714.[1] See Defendant's Memorandum at 3-4. As a result, the government moved to dismiss Worth on the grounds that the issuance of MD-715 rendered Worth moot. See Defendant's Memorandum at 3-4. In support of HUD's argument, then-Deputy Secretary Jackson directed plaintiff to execute a declaration that simply stated that, pursuant to MD-714, HUD's 2003 AEP expired on September 30, 2003, and that the 2003 AEP

---

[1] As challenged in Worth as unconstitutional, MD-714 required "[n]umerical goal setting where there [was] a manifest imbalance or conspicuous absence of minorities and women in the agency's work force." See Defendant's Memorandum at 3 (and Worth v. Jackson, No. 02cv1576, slip op. at 2-5, attached to Defendant's Memorandum as Exhibit No. 1). MD-715 does not provide for any numerical goal-setting. See Defendant's Memorandum at 3-4.

would not be renewed or reissued. Id. at 4. Plaintiff refused to sign the declaration and ultimately resigned from his position and from HUD.[2] Id. at 4-5.

Plaintiff claims that HUD's decision not to renew the 2003 AEP because the EEOC management directive on which it was based had been superseded violated § 2000e-16(b)(1) of Title VII, which provides that all executive agencies must "maintain an affirmative action program of equal employment opportunity." See 42 U.S.C. § 2000e-16(b)(1); see also Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss ("Plaintiff's Memorandum") at 21; Complaint ¶¶ 4, 30. He thus asserts that his "opposition" to signing a declaration that stated that the 2003 AEP would not be renewed was protected by the retaliation clause of Title VII because § 2000e-16(b)(1) falls under Title VII. Plaintiff is simply wrong as a matter of law.

The "opposition clause" in the retaliation provision upon which plaintiff bases his claim provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made *an unlawful employment practice* by this subchapter. . . .

20 U.S.C. § 2000e-3(a) (emphasis added). Title VII specifically defines what is an "unlawful employment practice." See 42 U.S.C. §§ 2000e-2 ("It shall be an unlawful employment practice for an employer . . ."); 2000e-3 (entitled "Other Unlawful Employment Practices"). All of the

---

[2] As noted in Defendant's Memorandum, then-Deputy Secretary Jackson ultimately signed the declaration on behalf of HUD, which was filed in support of the government's motion to dismiss. See Defendant's Memorandum at 5 n.1. On January 4, 2004, Judge Reggie B. Walton granted HUD's motion with regard to plaintiff's claims that challenged MD-714 and HUD's 2003 AEP that was in effect pursuant to MD-714. Id. Judge Walton thereafter dismissed all the remaining claims in Worth. Id. The Worth plaintiff filed a Notice of Appeal on August 11, 2005. See Docket 81 (Case No. 1:02-cv-01576-RBW).

"unlawful employment practices" in Title VII prohibit an employer from taking various personnel actions based on someone's race, color, religion, sex, or national origin.  Thus, the "opposition clause" in the retaliation provision protects an employee who complains to his employer about employment discrimination.  See <u>Johnson v. Washington Metropolitan Area Transit Authority</u>, 355 F. Supp. 2d 304, 309-10 (D.D.C. 2005) ("[u]nder the opposition clause, an employee must be permitted to make formal and informal complaints about practices claimed to be discriminatory"); <u>Jamil v. Secretary, Dept. of Defense</u>, 910 F.2d 1203, 1207 (4th Cir. 1990) ("Title VII is not a general "bad acts" statute; it only addresses discrimination on the basis of race, sex, religion, and national origin").

Section 2000e-16(b)(1) – the provision of Title VII upon which plaintiff relies –  is not included in the "unlawful employment practices" contained in Title VII.  Rather, that provision provides:

> The Equal Employment Opportunity Commission shall –
>
> (1) be responsible for the annual review and approval of a national and regional equal employment opportunity plan which each department and agency . . . shall submit in order to maintain an affirmative program of equal employment opportunity for all such employees and applicants for employment.

20 U.S.C. § 2000e-16(b)(1).  Nothing in this provision states that it would be an "unlawful employment practice" under Title VII for an agency to fail to submit "an affirmative program of equal employment opportunity."  Thus, even if HUD had some statutory obligation to maintain an AEP and did not, such an action does not amount to an "unlawful employment action," as that term is defined by Title VII and provided protection under the retaliation provision.

Plaintiff's response to defendant's statutory argument is sparse: he claims that the word "subchapter" in the "opposition clause" refers to the entirety of Title VII and that the opposition

4

clause applies to employment practices made unlawful anywhere in Title VII. See Plaintiff's Memorandum at 25. The fallacy of plaintiff's argument, however, is that Title VII only protects opposition to a practice made *"an unlawful employment practice"* under Title VII, not simply opposition to violations of Title VII generally. Sections 2000e-2 and 2000e-3 specifically defines what amounts to an "unlawful employment practice"; all of the "practices" in these sections deal with some form of unlawful employment discrimination. Nowhere in those sections does it state that an agency's failure to maintain an affirmative action program under section 2000e-16(b)(1), amounts to an "unlawful employment practice" that is afforded the protection of Title VII's retaliation provision. See Meese v. Keene, 481 U.S. 465, 484 (1987) ("[i]t is axiomatic that the statutory definition of the term excludes unstated meanings of that term").

Plaintiff has not otherwise alleged that HUD engaged in any kind of discriminatory employment practice by not renewing its 2003 AEP because the issuance of MD-715 superseded the EEOC management directive upon which the 2003 AEP was based. Nowhere in his Complaint does plaintiff allege any kind of discrimination on the part of HUD in not renewing the 2003 AEP. See generally Complaint. Indeed, nothing in the declaration that plaintiff refused to sign said that HUD would not issue a new AEP in compliance with MD-715.[3]

---

[3] Significantly, § 2000e-16(b) focuses on the responsibilities of the EEOC, and is not a direct charge to the particular agencies. See id. That section provides the EEOC with the authority to issue "rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section." Id. The EEOC has issued a regulation as well as management directives for federal agencies' establishment and maintenance of affirmative programs of equal employment opportunity. See, e.g., 29 C.F.R. § 1614.102; MD-715. Thus, any requirement of a federal agency to maintain an affirmative program of equal employment opportunity flows from the direction for such programs provided by the EEOC. As relevant here, MD-715 specifically notes that it supersedes MD-714 and that "agency heads are

Plaintiff submitted a declaration with his opposition "to elaborate on the allegations in his complaint."[4]  See Declaration of William C. King ¶ 1 ("King Declaration"), attached to Plaintiff's Memorandum.  The declaration, however, contains no allegation that by not renewing the 2003 AEP, HUD was engaging in any kind of discriminatory act.[5]  Plaintiff essentially claims that he did not sign the Worth declaration because he believed that signing the declaration and no longer having the 2003 AEP in place would undermine HUD's *past* efforts to end employment discrimination.  See, e.g, King Declaration¶ 30 (emphasis added).  He points to no actual or alleged discriminatory action or practice by HUD or by any of its officials in the absence of the type of AEP that he favors.  To the extent plaintiff is alleging that by not renewing the 2003 AEP, HUD's hiring decisions would suddenly be discriminatory, such a baseless, speculative claim is not objectively reasonable.[6]

---

responsible for. . . [e]nsuring the compliance with [MD-715] and those implementing instructions issue by EEOC in accordance with existing law and authority."  See MD-715 (can be found at www.eeoc.gov/federal/md715/index.html).

[4] The Court should not consider plaintiff's declaration because it is a matter outside of the pleadings.  See Fed. R. Civ. P. 12(b)(6).  Nor can plaintiff amend his complaint through his declaration.  See, e.g., Ali v. District of Columbia, 278 F.3d 1, 8 (D.C. Cir. 2002) (refusing to allow plaintiff to amend his complaint through references in briefs).  If the Court were to consider plaintiff's declaration, defendant's motion would have to be treated as a motion for summary judgment, and the Court must then provide defendant with reasonable notice to decide whether to respond with any affidavits.  See Fed. R. Civ. P. 12(b)(6); Hollis v. U.S. Dept. of the Army, 856 F.2d 1541, 1543 (D.C. Cir. 1988).

[5] Moreover, the allegations in the declaration regarding the history of HUD's EEO process are simply irrelevant to the present motion.  See, e.g., Plaintiff's Memorandum at 7-12; King Declaration ¶¶ 5-20.

[6] As stated in Defendant's Memorandum (at 11-12), the fact that plaintiff worked in the EEO field and was "opposing" a particular aspect of his position does not automatically bring him under the protections of Title VII.  See, e.g., Pendelton v. Rumsfeld, 628 F.2d 102, 106-08 (D.C. Cir. 1980).  Defendant, however, is not asserting here that no circumstances exist in which plaintiff could bring a retaliation claim against HUD.  For instance, if defendant instructed

Thus, because plaintiff has failed to allege that he engaged in any statutorily-protected activity that is afforded the protection of the opposition clause, he cannot state a claim upon which relief can be granted. His case should, therefore, be dismissed.

II.     **THE CASES RELIED ON BY PLAINTIFF IN HIS OPPOSITION ARE INAPPOSITE**.

Plaintiff primarily relies on three cases – only one from the D.C. Circuit – to support his claim that his case is not subject to dismissal for failure to state a claim. See Plaintiff's Memorandum at 20-25. In contrast to plaintiff's case here, the particular actions at issue in the cases relied on by plaintiff each constituted an "unlawful employment practice," as that phrase is defined by Title VII, because they all involved some kind of alleged employment discrimination that the plaintiff in those cases were opposing.

Plaintiff first relies on Parker v. Baltimore and Ohio Railroad Co., 652 F.2d 1012 (D.C. Cir. 1981). He claims that Parker is dispositive here based on its holding that the protection of the opposition clause extends to employees who reasonably believe that their employers' affirmative action programs violate Title VII. See Plaintiff's Memorandum at 20-22. Plaintiff's application of Parker is flawed.

In Parker, a reverse discrimination case, the plaintiff, a white male who actively but unsuccessfully sought transfers or promotions, challenged the Baltimore and Ohio Railroad Company's ("B &O's") affirmative action plan and further claimed that B & O had "retaliated against Parker for his opposition to *discriminatory employment practices*." Id. at 1013

---

plaintiff to hire an individual based solely on that person's race or sex and plaintiff's refusal to do so resulted in a disciplinary action against him, he could possibly state a retaliatory claim against the agency. Such a factual scenario, however, is not presently before the Court.

7

(emphasis added).  As opposed to the present case, the plaintiff in Parker opposed an affirmative action plan that provided for racial preferences, *i.e.*, the plaintiff was claiming that the racial preferences amounted to employment discrimination.  Id. at 1013-14.  The district court had found that the plaintiff would not be protected by Title VII if B & O's affirmative action plan was lawful, but the D.C. Circuit rejected that reasoning, noting that "making the protected nature of an employee's opposition to *alleged discrimination* depend on the ultimate resolution of his claim would be inconsistent with the remedial purpose of Title VII." Id. at 1019 (emphasis added); see also id. ("by extending protection to employees *who oppose discriminatory practices* without recourse to the EEOC, Congress encouraged voluntary internal attempts to remedy discrimination") (emphasis added).

      The D.C. Circuit thus found that an employee seeking the protection of the opposition clause must demonstrate a "good faith, reasonable belief that the challenged practice violates Title VII," *i.e.,* that the alleged employment practice is discriminatory.  Id. at 1020.  Notably, in discussing this "good faith" standard, the court had in mind the employee with limited knowledge of Title VII, stating that "a layperson should not be burdened with the 'sometimes impossible task' of correctly anticipating how a given court will interpret a particular statute.'" Id. at 1020 (citation omitted).

      Here, in contrast, plaintiff does not claim that the failure to renew the 2003 AEP issued pursuant to a defunct EEOC management directive is an "unlawful employment practice," *i.e.*, unlawful employment discrimination.  Nor is plaintiff the typical "layperson" that the D.C. Circuit had in mind when considering the "good faith" standard.  See id.  As the former Director of HUD's ODEEO, he served "as principal advisor to the Secretary and Deputy Secretary on

8

matters related to HUD's equal employment program." Plaintiff's Memorandum at 7.  His duties required him to have intricate knowledge of discrimination laws.  Id.  Plaintiff is also a lawyer and served as a supervisory Assistant General Counsel in HUD's Office of the General Counsel for five years.  Id. at 6.  Given that plaintiff's theory of his case could not be reasonable even for the "layperson," it certainly would not be reasonable for someone with plaintiff's background and significant experience in the area of employment discrimination law.  Thus, even under the standard set in Parker, plaintiff's claim must fail as a matter of law.

Plaintiff's reliance on Johnson v. Univ. of Cincinnati, 215 F.3d 561 (6th Cir. 2000), is also misplaced.  See Plaintiff's Memorandum at 23.  The plaintiff in Johnson was in charge of the University's affirmative action program.  He claimed that he was retaliated against because he opposed the hiring of individuals contrary to the defendant's affirmative action program.  The unlawful employment practices alleged by the Johnson plaintiff were specific hiring decisions that the plaintiff reasonably believed were discriminatory.  Id. at 578.  The Sixth Circuit thus found that a high-level affirmative action official alleging unlawful employment practices may be protected by the opposition clause, so long as the plaintiff maintains a good faith belief that the particular employment practice was discriminatory.  Id. at 580.

Here, again in contrast, plaintiff is not challenging any specific hiring decisions that resulted from HUD's failure to continue to implement the 2003 AEP or any other specific discriminatory act.  Any belief by plaintiff that he has stated an unlawful employment practice cannot be said to be objectively reasonable.

The present case is more analogous to the Sixth Circuit's decision in Holden v. Owens-Illinois, Inc., 793 F.2d 745 (6th Cir. 1986).  There, the defendant hired the plaintiff to manage the

9

defendant's affirmative action programs and to design and implement affirmative action plans that would comply with federal law. Id. at 746. The plaintiff alleged retaliation for her attempts to implement the company's affirmative action program in compliance with Title VII. Id. at 746. The Sixth Circuit held that the implementation of an affirmative action program was not protected conduct under the "opposition clause." Id. at 749. Similarly here, plaintiff is alleging retaliation based on his attempts to continue the implementation of HUD's 2003 AEP. As in Holden, his allegation does not amount to protected conduct.

Although plaintiff tries to dismiss Holden by merely noting that the case predates Johnson, see Plaintiff's Memorandum at 26, n. 7, Johnson did not change the holding in Holden. Indeed, Johnson specifically distinguished the two cases:

> [T]he scope of *Holden* extends only to an employee who protests the implementation of the affirmative action program; because Plaintiff protested *discrimination* that occurred in the hiring process, which was contrary to law as well as the affirmative action program, his case falls beyond *Holden's* reach. To hold otherwise would improperly expand the scope of *Holden* to include not only the employee who protests an employer's *failure to implement* an affirmative action program under Title VII, but also the employee who *opposes discrimination* that occurs in the hiring process the likes of which the affirmative action program was designed to correct and prevent.

Johnson, 215 F.3d at 579 (emphasis in original). In applying the principles of Johnson and Holden to the present case, plaintiff is the employee "who protests an employer's *failure to implement* an affirmative action program under Title VII," not the employee "who *opposes discrimination* that occurs in the hiring process" because plaintiff here has not alleged any such discrimination. See Johnson, 215 F.3d at 579 (emphasis in original).

Moyo v. Gomez, 40 F.3d 982 (9th Cir. 1995), the third case relied on by plaintiff, see Plaintiff's Memorandum at 23-24, is similarly distinguishable. In Moyo, a black corrections

officer alleged that he was fired for protesting against and refusing to cooperate with the defendant's practice of allowing showers after work shifts to white inmates but not to black inmates working the same job shift.  Id. at 984.  The court noted that the plaintiff must show that "he protested or otherwise *opposed unlawful employment discrimination* directed against employees protected by Title VII."  Id. at 984 (emphasis added).  Again, as opposed to the plaintiff in Moyo, plaintiff here has not alleged that he opposed any unlawful employment discrimination practice.

Plaintiff also claims that the EEOC Compliance Manual supports his position.  See Plaintiff's Memorandum at 24.  He is incorrect.  As with the above cases, the EEOC Compliance Manual defines anti-retaliation provisions as follows:

> The anti-retaliation provisions make it unlawful to discriminate against an individual because s/he has opposed any practice made unlawful under the employment discrimination statutes.  This protection applies if an individual explicitly or implicitly communicates to his or her employer or other covered entity a belief that its activity *constitutes a form of employment discrimination* that is covered by any of the statutes enforced by the EEOC.

EEOC Compliance Manual, § 8-5 at 8-II.B.1 (1998) (emphasis added) (can be found at www.eeoc.gov/policy/docs/retal.html).  Examples of opposition in the EEOC Compliance Manual include: "[t]hreatening to file a charge or other complaint alleging discrimination"; [c]omplaining to anyone about alleged discrimination against oneself or others"; and "[r]efusing to obey an order because of a reasonable belief that it is discriminatory."  Id. 8-II.B.2.

Here, plaintiff has not alleged that by refusing to sign the declaration he was opposing an order he reasonably believed to be discriminatory because he does not allege any kind of discrimination.  Plaintiff has simply failed to state any retaliation claim under Title VII.

11

## **CONCLUSION**

For the reasons set forth above, as well as those stated in Defendant's Memorandum, defendant respectfully requests that this Court grant defendant's motion to dismiss plaintiff's complaint for failure to state a claim.

                                            Respectfully submitted,

                                            PETER D. KEISLER
                                            Assistant Attorney General

                                            KENNETH L. WAINSTEIN
                                            United States Attorney

                                             /s/ Renée S. Orleans
                                            JENNIFER R. RIVERA (VA Bar 29281)
                                            RENÉE S. ORLEANS (MD Bar)
                                            U.S. Department of Justice, Civil Division
                                            Federal Programs Branch
                                            20 Massachusetts Ave., N.W., Room 7120
                                            Washington, D.C.  20530
                                            Phone: (202) 514-4504; Fax: (202) 616-8470
                                            Email: renee.orleans@usdoj.gov

Dated: September 19, 2005                          **Counsel for Defendant**