UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

MAR 2 4 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

William C. King,       )
                       )
    Plaintiff,         )
                       )
    v.                 )    Civ. Action No. 05-1074 (RJL)
                       )
Alphonso R. Jackson,   )
  Secretary of Housing and )
  Urban Development,   )
                       )
    Defendant.         )

## MEMORANDUM OPINION
(March 22, 2006) [#5]

Plaintiff William King, the former Director of the Office of Departmental Equal Employment Opportunity ("ODEEO"), brings this suit against defendant Alphonso Jackson, Secretary of Housing and Urban Development, alleging that he was unlawfully coerced into resignation and constructively discharged from employment at the Department of Housing and Urban Development ("HUD") in violation of the "opposition clause" of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16 ("Title VII"). Currently before the Court is defendant's Motion to Dismiss on grounds that plaintiff fails to state a claim upon which relief can be granted. For the reasons set forth below, the defendant's Motion is GRANTED.



## BACKGROUND

From March 19, 2000 until October 21, 2003, plaintiff served as the Director of the ODEEO at HUD. (Compl. ¶ 14.) As part of his duties in this position, plaintiff served as the principal advisor to the Secretary and Deputy Secretary of HUD on matters concerning the Department's equal employment program. (*Id.* ¶ 15.) In addition, he had nationwide responsibility for HUD's Equal Employment Opportunity ("EEO") and Affirmative Employment programs. (*Id.*) Plaintiff's responsibilities included the production and maintenance of HUD's annual Department-wide Affirmative Employment Program ("AEP"). (*Id.* ¶ 16.)

In his Complaint, plaintiff alleges that he was dismissed from employment for failure to sign a court-ordered declaration in a class action suit brought against former HUD Secretary Mel Martinez[1] and Equal Employment Opportunity Commission ("EEOC") Chair Cari Dominguez. (*See* Compl. ¶ 5-9.) The class action suit, *Worth v. Jackson*, 377 F. Supp. 2d 177 (D.D.C. 2005), was filed on August 8, 2002 by Dennis Worth, a white male employed by HUD, on behalf of a class of white male employees of federal departments and agencies. *Worth*, 377 F. Supp. 2d at 179. The suit challenged, *inter alia*, the affirmative action employment plans that were implemented by HUD in accordance with the Equal Employment Opportunity Commission's ("EEOC") Management Directive 714 ("MD-714").

---

[1] On or around January 5, 2004, pursuant to Federal Rule of Civil Procedure 25, the Court substituted the Acting Secretary of the Department of Housing and Urban Development, Alphonso Jackson, for former Secretary Mel Martinez as the proper defendant. *See Worth v. Jackson*, No. Civ.A. 02-1576, 2005 WL 3279979, at n.1 (D.D.C. Feb. 23, 2005).

*Id.* MD-714 obligated all federal departments and agencies to create an affirmative employment plan for minorities and women and to establish goals and target dates to eliminate the alleged underrepresentation of these groups at all organizational levels. *Id.* at 179 n.2. More specifically, MD-714 explicitly provided for "[n]umerical goal setting where there [was] a manifest imbalance or conspicuous absence of minorities and women in the agency's work force." *Worth v. Jackson*, No. 02cv1576, slip op. at 4 (D.D.C. Jan. 5, 2004).

On October 1, 2003, MD-714 was to be superceded by the adoption of Management Directive 715 ("MD-715"). *Worth*, 377 F. Supp. 2d at 179. Unlike MD-714, MD-715 did not provide for any numerical goal-setting objectives. Instead, "MD-715's 'overriding objective . . . [was] to ensure that all employees and applicants for employment enjoy equality of opportunity in the federal workplace regardless of race, sex, national origin, color, religion, disability or reprisal for engaging in prior protected activity.'" *Worth*, slip op. at 5 (quoting MD-715 at i-ii) (emphasis removed). Plaintiff alleges that MD-715 "is silent as it relates to federal agencies' maintenance of affirmative employment programs of equal employment opportunities." (Compl. ¶ 27.)

On August 20, 2003, Judge Walton of this Court ordered the defendants to file a brief discussing the issuance of MD-715 and the continued effect, if any, of MD-714. (*See* Aug. 20, 2003 *Worth* Order at 1.) In response to the District Court's Order, defendant, then-Deputy Secretary Jackson, directed plaintiff to execute a declaration that stated:

> Pursuant to EEOC Management Directive 714 ('MD-714'), HUD's Fiscal Year ('FY') 2003 Affirmative Employment Plan ('AEP') expires on

September 30, 2003.

The FY 2003 HUD AEP will not be renewed or reissued.

(*See* Compl. ¶ 28.) Plaintiff refused to sign the declaration based on his personal belief "that HUD was required by federal law and regulation, including Title VII, to prepare, update, and maintain a program of affirmative employment for recruitment and hiring at HUD." (*Id.*)

On September 9, 2003, Deputy Secretary Jackson advised plaintiff that unless he resigned, he would be fired for insubordination for refusing a direct order to execute the declaration. (*Id.* ¶ 32.) The next day, plaintiff submitted his resignation, but dated it effective September 30, 2003. (*Id.* ¶ 33.) Defendant subsequently accepted plaintiff's resignation and placed him on administrative leave. (*Id.* ¶ 34.) Upon the belief that the defendant had reconsidered his decision, plaintiff withdrew his resignation before it became effective. (*Id.* ¶ 35.) Plaintiff contends that upon learning that he had withdrawn his resignation, defendant relieved plaintiff of his duties and responsibilities, detailed plaintiff to a position outside of his office, proposed to discharge plaintiff for insubordination for refusing a direct order to execute the declaration in *Worth*, and arranged for former HUD Secretary Martinez to discharge plaintiff. (*Id.* ¶ 36.) Plaintiff subsequently became eligible for early retirement and tendered his resignation before being discharged. (*Id.* ¶ 39-40.)

Plaintiff's present Complaint presents two counts of unlawful retaliation in violation of Title VII.[2] In both counts, plaintiff alleges that he engaged in activity protected under the

---

[2] In Count I of the Complaint, plaintiff alleges that defendant's alleged retaliation coerced him into resigning from HUD (Compl. ¶ 49), while Count II alleges that the retaliation "rendered plaintiff's working conditions intolerable and caused his constructive discharge" (*id.* ¶ 57).

opposition clause of Title VII when he refused defendant's direct order to execute the declaration in *Worth*.[3] (*Id.* ¶ 46, 54.) Plaintiff claims that he was retaliated against when defendant relieved him of his duties and responsibilities, detailed him to a position outside of his office, proposed to discharge him from HUD for insubordination, and arranged for his discharge. (*Id.* ¶ 46-47, 54-55.)

## DISCUSSION

I.   *Standard of Review*

Federal Rule of Civil Procedure 12(b)(6) provides that a district court should dismiss a complaint for failure to state a claim upon which relief can be granted when it is clear that no relief could result under any facts consistent with the complaint's allegations. *Conley v. Gibson*, 355 U.S. 41, 45-47 (1957); *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997). Thus, in evaluating defendant's motion, the Court will assume the truth of all of the factual allegations set forth in plaintiff's complaint, *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985), and will construe the complaint liberally in favor of the plaintiff, *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979).

---

[3]   All claims in the *Worth* class action have been dismissed pursuant to orders dated February 23, 2005 and July 19, 2005 by Judge Reggie B. Walton. *Worth*, 377 F. Supp. 2d at 185-86. On January 5, 2004, subsequent to the execution of the aforementioned declaration by then-Deputy Secretary Jackson, Judge Walton granted the government's motion to dismiss on mootness grounds and denied it in part. *Id.* at 179. Specifically, Judge Walton dismissed as moot the claims in *Worth* that challenged MD-714 and HUD's AEP that was in force pursuant to MD-714. *Id.*

II.     *Retaliation in Violation of Title VII*

Evaluation of retaliation claims under Title VII follows the same *McDonnell Douglas* burden-shifting template as discrimination claims. *Holcomb v. Powell*, 433 F.3d 889, 901 (D.C. Cir. 2006). Under this scheme, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once the plaintiff makes such a showing, the burden shifts to the defendant employer to specify "some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* Assuming that the employer is able to meet its burden of producing a nondiscriminatory reason for its actions, "the plaintiff has the ultimate burden of establishing that the reason asserted by the employer is pretext for retaliation." *Holcomb*, 433 F.3d at 901.

To establish a prima facie case of retaliation under Title VII, the plaintiff must present evidence that (1) he engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) the adverse action was causally related to the exercise of his rights. *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003). Unfortunately for plaintiff, he is unable to get past the first prong of this analysis.

Title VII's anti-retaliation provision provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter" (the "opposition clause"), or "because he has made a charge, testified, assisted,

6

or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (the "participation clause"). 42 U.S.C. § 2000e-3(a).

Because plaintiff does not allege that he participated in any investigation, proceeding, or hearing under Title VII, the Court considers plaintiff's retaliation claims under the opposition clause of Title VII's retaliation provision. As discussed above, plaintiff alleges that he opposed a practice made an unlawful employment practice under Title VII when he refused to sign a declaration in support of the Government's motion to dismiss in *Worth*. Plaintiff's refusal was based on his belief that his signature would have effectively extinguished HUD's current affirmative action plan (MD-714) and that HUD's failure to have an affirmative action plan in place would violate Title VII, specifically 42 U.S.C. § 2000e-16(b)(1).[4] Simply put, however, plaintiff's refusal to sign the *Worth* declaration is not an "unlawful employment practice" as defined by Title VII and thus does not qualify as "protected activity" for the purposes of establishing a prima facie case of retaliation. Indeed, this is true even if HUD's failure to have an affirmative action plan in place does in fact legally contravene 42 U.S.C. § 2000e-16(b)(1).[5]

In defining an "unlawful employment practice," Title VII explicitly states:

It shall be an unlawful employment practice for an employer –

---

[4] Section 2000e-16(b)(1) provides that the EEOC is "responsible for the annual review and approval of a national and regional equal employment opportunity plan which each [federal] department . . . shall submit in order to maintain an affirmative program of equal employment opportunity for all such employees and applicants for employment."

[5] The Court expresses no opinion as to the merits of such a claim.

7

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).[6] Stated more succinctly, an "unlawful employment practice" is an act of employment discrimination based on an individual's race, color, religion, sex, or national origin. Thus, Title VII's opposition clause protects an individual who opposes an act of employment discrimination.

Plaintiff, however, does not allege that his opposition was directed at any act of employment discrimination allegedly taken by the defendant. Instead, he alleges that "HUD's failure to have an affirmative employment plan in place would violate [*inter alia*] Title VII, 42 U.S.C. § 2000e-16(b)(1)." (Compl. ¶ 30.) But HUD's failure to satisfy the affirmative action plan reporting requirement of 42 U.S.C. § 2000e-16(b)(1) is not included among the "unlawful employment practices" explicitly set forth in Title VII at 42 U.S.C. § 2000e-2(a).[7] Thus, plaintiff cannot establish that he engaged in the type of "protected

---

[6] The other "unlawful employment practices" defined in 42 U.S.C. § 2000e-2 are inapplicable to the facts of this case, as they apply to, *inter alia*, employment agencies practices, labor organizations practices, and training programs.

[7] Plaintiff asserts that the protection of the opposition clause "extends to employment practices made unlawful anywhere in Title VII, not only in 42 U.S.C. § 2000e-2." (Pl.'s Mem of P. & A. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 25.) He thus argues that a violation of 42 U.S.C. § 2000-16(b)(1) should be considered an "unlawful employment practice" for purposes of establishing a prima facie case of retaliation. This argument is unavailing for several reasons. First, this Court does not read § 2000-16(b)(1)'s affirmative action plan reporting requirement to be

activity"that would enable him to make out a prima facie case of retaliation under Title VII. *See Logan v. Dep't of Veteran Affairs*, 404 F. Supp. 2d 72, 77 (D.D.C. 2005) (holding that the activities in which plaintiff engaged were not "'protected' within the meaning of Title VII because they did not include a claim of discrimination based upon race, color, religion, sex or national origin"). As such, plaintiff's retaliation claims must be dismissed.

Plaintiff's citation to *Parker v. Baltimore & Ohio Railroad Co.*, 652 F.2d 1012 (D.C. Cir. 1981) – a decision that plaintiff contends "is dispositive here" (Pl.'s Opp'n at 22) – is likewise to no avail. The plaintiff in *Parker*, a white male railroad employee, brought suit against his employer, Baltimore and Ohio Railroad ("B&O"), alleging race and gender discrimination in promotion. 652 F.2d at 1013-14. The plaintiff believed that B&O's affirmative action plan, which granted hiring preferences to minority and female employees, constituted unlawful reverse discrimination in violation of Title VII. *Id.* In addition to his direct claims of discrimination, the *Parker* plaintiff brought a Title VII retaliation claim, alleging that B&O had retaliated against him "for his opposition to discriminatory employment practices." *Id.* at 1013. After determining that B&O's affirmative action plan was in fact lawful, the District Court found that plaintiff's opposition to the plan could not

---

an "employment practice"of any kind within the meaning of Title VII, let alone an unlawful one. And second, it is a longstanding principle of statutory interpretation that "[w]hen a statute includes an explicit definition, [a court] must follow that definition." *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000); *see also Meese v. Keene*, 481 U.S. 465, 484 (1987) ("It is axiomatic that the statutory definition of the term excludes unstated meanings of that term"); *cf. Colautti v. Franklin*, 439 U.S. 379, 393 n.10 (1979) ("As a rule, 'a definition which declares what a term "means" . . . excludes any meaning that is not stated.'" (citation omitted)). Thus, because Congress set forth an explicit definition of "unlawful employment practice" in § 2000e-2, this Court is bound to apply that definition to the facts of this case.

be protected by Title VII. *Id.* at 1019. Our Circuit rejected this interpretation of the opposition clause, reasoning that "making the protected nature of an employee's opposition to alleged discrimination depend on the ultimate resolution of his claim would be inconsistent with the remedial purpose of Title VII." *Id.*; *see also id.* at 120 ("An employer has . . . no legitimate interest in retaliating against an employee for opposition per se, and the fact that a nonfrivolous claim is ultimately resolved in favor of management does not justify an attempt to suppress the claim by penalizing the employee who raised it.").

Relying on *Parker*, plaintiff contends that because he "reasonably believed that HUD's decision not to renew its Departmentwide Affirmative Employment Program . . . violated . . . Title VII," his refusal to sign the *Worth* declaration is conduct protected by Title VII's opposition clause. (Pl's Opp'n at 21.) But *Parker*'s holding is irrelevant to the facts of this case. For even if HUD's failure to renew MD-714 did in fact contravene 42 U.S.C. § 2000e-16(b)(1), such a failure still would not constitute an "unlawful employment practice" as defined by Title VII. Indeed, by his own admission, plaintiff's opposition was "to HUD's effort to undermine the eradication of employment discrimination" (Pl.'s Opp'n at 21) and not to any particular *act* of employment discrimination. Thus, the fact that plaintiff believed – reasonably or not – that HUD's decision violated § 2000e-16(b)(1) does not change the fact that he nevertheless did not engage in conduct protected under the opposition clause of Title VII. Accordingly, the plaintiff has failed as a matter of law to allege that he engaged in statutorily protected activity for the purposes of establishing a prima facie case of retaliation

under Title VII. As such, the Court GRANTS the defendant's Motions to Dismiss. An appropriate Order will issue with this Memorandum Opinion.

/s/ Richard J. Leon
RICHARD J. LEON
United States District Judge